# RICHARDS ET AL. *v.* UNITED STATES ET AL.

No. 59.   Argued November 15, 1961.—Decided February 26, 1962.

1

2

*Truman B. Rucker* argued the cause for petitioners. With him on the briefs was *Edward M. O'Brien.*

*Richard J. Medalie* argued the cause for the United States. With him on the brief were *Solicitor General Cox, Assistant Attorney General Orrick, Alan S. Rosenthal* and *Sherman L. Cohn.*

*W. B. Patterson* argued the cause for American Airlines, Inc., respondent. With him on the briefs was *Fred M. Mock.*

MR. CHIEF JUSTICE WARREN delivered the opinion of the Court.

The question to be decided in this case is what law a Federal District Court should apply in an action brought under the Federal Tort Claims Act [1] where an act of negligence occurs in one State and results in an injury and death in another State. The basic provision of the Tort Claims Act states that the Government shall be liable for tortious conduct committed by its employees acting within the scope of their employment "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the

---

[1] The provisions of the Tort Claims Act are now found in 28 U. S. C. §§ 1291, 1346, 1402, 1504, 2110, 2401, 2402, 2411, 2412, and 2671–2680.

law of the place where the act or omission occurred." [2]
The parties urge that the alternatives in selecting the law
to determine liability under this statute are: (1) the
internal law of the place where the negligence occurred,
or (2) the whole law (including choice-of-law rules) of
the place where the negligence occurred, or (3) the inter-
nal law of the place where the operative effect of the
negligence took place.

Although the particular facts of this case are relatively
unimportant in deciding the question before us, a brief
recitation of them is necessary to set the context for our
decision. The petitioners are the personal representa-
tives of passengers killed when an airplane, owned by the
respondent American Airlines, crashed in Missouri while
en route from Tulsa, Oklahoma, to New York City. Suit
was brought by the petitioners against the United States
in the Federal District Court for the Northern District of
Oklahoma, on the theory that the Government, through
the Federal Aviation Agency, had "negligently failed to
enforce the terms of the Civil Aeronautics Act and the
regulations thereunder which prohibited the practices
then being used by American Airlines, Inc., in the over-
haul depot of Tulsa, Oklahoma." [3] The petitioners in
each case either had already received a $15,000 settlement
from the Airlines, the maximum amount recoverable
under the Missouri Wrongful Death Act,[4] or had been
tendered that amount. They sought additional amounts
from the United States under the Oklahoma Wrongful

---

[2] 28 U. S. C. § 1346 (b).

[3] Under 72 Stat. 778, 49 U. S. C. § 1425, the Administrator of the
Federal Aviation Agency is charged with the responsibility of enforc-
ing rules and regulations controlling inspection, maintenance, over-
haul and repair of all equipment used in air transportation.

[4] Mo. Rev. Stat., 1949, § 537.090. Subsequent to the origination
of these actions the Missouri Code was amended to provide for
maximum damages of $25,000. Mo. Rev. Stat., 1959, § 537.090.

Death Act[5] which contains no limitation on the amount a single person may recover from a tortfeasor. The Government filed a third-party complaint against American Airlines, seeking reimbursement for any amount that the petitioners might recover against the United States.

After a pretrial hearing, the District Court ruled that the complaints failed to state claims upon which relief could be granted under the Oklahoma Act since that statute could not be applied extraterritorially "where an act or omission occurring in Oklahoma results in injury and death in the State of Missouri."[6] Alternatively, the court noted that if Oklahoma law was applicable under the Federal Tort Claims Act, "then the general law of Oklahoma, including its conflicts of law rule, is applicable thereunder," thus precluding further recovery since the Oklahoma conflicts rule would refer the court to the law of Missouri, the place where the negligence had its operative effect.[7] In dismissing the petitioners' complaints against the United States, the court found it unnecessary to pass upon the third-party complaint asserted by the Government against American. On appeal, the Court of Appeals for the Tenth Circuit affirmed the judgment by a divided vote,[8] the majority agreeing with the lower court that the complaints failed to state a cause of action upon which relief could be based under either the Oklahoma or the Missouri Wrongful Death Act. In dissent, the chief judge, believing that Congress intended the internal law of the place where the act or omission occurred to control the rights and liabilities of the parties, stated that he thought it was error to apply the Oklahoma

---

[5] Okla. Stat., 1951, Tit. 12, §§ 1051–1054.

[6] The opinion of the District Court is not reported.

[7] *Gochenour* v. *St. Louis-San Francisco R. Co.*, 205 Okla. 594, 239 P. 2d 769.

[8] 285 F. 2d 521.

conflict-of-laws rule, and would have remanded the case for a determination of liability under the Oklahoma Act.

That the question confronting us is an important one and of a recurring nature is made apparent by the conflicting views expressed in its solution by the lower federal courts. In the five circuits in which it has arisen, resolution of the question has been reached by adoption of one or another of the alternatives urged upon us by the parties to this suit. The petitioners' contention, that the reference in Section 1346 (b) to the "place where the act or omission occurred" directs application of only the internal law of that State—here, Oklahoma—is supported by the Seventh Circuit's decision in *Voytas* v. *United States,* 256 F. 2d 786, and by the District of Columbia Circuit in *Eastern Air Lines* v. *Union Trust Co.,* 95 U. S. App. D. C. 189, 221 F. 2d 62, as well as by the dissenting judge of the Tenth Circuit in the instant case. The Government's interpretation of the Act, that in order also to give effect to Section 2674,[9] providing that the United States shall be liable in the same manner as a private individual, a court must refer to the whole law of the State where the act or omission occurred, was adhered to by the Second Circuit in *Landon* v. *United States,* 197 F. 2d 128, as well as by the Tenth Circuit in the case at bar. American Airlines, although willing to abide by the interpretation advanced by the Government, suggests, as an alternative, that the internal law of the place where the negligence had its operative effect—here, Missouri—should control. This construction of the Act is supported by the Ninth Circuit's decision in *United States* v. *Marshall,* 230 F. 2d 183, and by the dissenting opinion in the *Union Trust* case, *supra.* It was to resolve the threefold conflict and to enunciate a rule that can be applied uniformly in Tort Claims Act cases that we granted certiorari. 366 U. S. 916.

---

[9] 28 U. S. C. § 2674.

## I.

The principal provision of the Federal Tort Claims Act, originally enacted as Title IV of the Legislative Reorganization Act of 1946,[10] is Section 1346 (b), reading in pertinent part:

"... the district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

Section 2674, also relevant to our decision, provides:

"The United States shall be liable, respecting ... tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages."

The Tort Claims Act was designed primarily to remove the sovereign immunity of the United States from suits in tort and, with certain specific exceptions; to render the Government liable in tort as a private individual would be under like circumstances.[11] It is evident that the Act was not patterned to operate with complete independence

---

[10] 60 Stat. 842 (1946).

[11] See *Feres* v. *United States*, 340 U. S. 135, for a detailed analysis of the purposes of the Federal Tort Claims Act in the context of its legislative history.

from the principles of law developed in the common law and refined by statute and judicial decision in the various States. Rather, it was designed to build upon the legal relationships formulated and characterized by the States, and, to that extent, the statutory scheme is exemplary of the generally interstitial character of federal law. If Congress had meant to alter or supplant the legal relationships developed by the States, it could specifically have done so to further the limited objectives of the Tort Claims Act. That is, notwithstanding the generally interstitial character of the law, Congress, in waiving the immunity of the Government for tortious conduct of its employees, could have imposed restrictions and conditions on the extent and substance of its liability.[12] We must determine whether, and to what extent, Congress exercised this power in selecting a rule for the choice of laws to be applied in suits brought under the Act. And, because the issue of the applicable law is controlled by a formal expression of the will of Congress, we need not pause to consider the question whether the conflict-of-laws rule applied in suits where federal jurisdiction rests upon diversity of citizenship shall be extended to a case such as this, in which jurisdiction is based upon a federal statute.[13] In addition, and even though Congress has left to judicial implication the task of giving content to its will in selecting the controlling law, because of the formal expression found in the Act itself, we are presented with a situation wholly distinguishable from those cases in which our initial inquiry has been whether the appropriate rule should be the simple adoption of state

---

[12] *Soriano* v. *United States*, 352 U. S. 270; *United States* v. *Sherwood*, 312 U. S. 584.

[13] *Klaxon Co.* v. *Stentor Electric Mfg. Co.*, 313 U. S. 487. See *Vanston Bondholders Protective Committee* v. *Green*, 329 U. S. 156; *McKenzie* v. *Irving Trust Co.*, 323 U. S. 365; *D'Oench, Duhme & Co.* v. *Federal Deposit Ins. Corp.*, 315 U. S. 447.

law.[14]  Here, we must decide, first, to which State the words "where the act or omission occurred" direct us, and, second, whether application of the internal law or the whole law of that State would be most consistent with the legislative purpose in enacting the Tort Claims Act.

## II.

The legislative history of the Act, although generally extensive,[15] is not, except in a negative way, helpful in solving the problem of the law to be applied in a multi-state tort action such as is presented by the facts of this case.  It has been repeatedly observed that Congress did not consider choice-of-law problems during the long period that the legislation was being prepared for enactment.[16]  The concern of Congress, as illustrated by the legislative history,[17] was the problem of a person injured by an employee operating a government vehicle or otherwise acting within the scope of his employment, situations

---

[14] See, *e. g., Holmberg* v. *Armbrecht,* 327 U. S. 392; *Clearfield Trust Co.* v. *United States,* 318 U. S. 363; *D'Oench, Duhme & Co.* v. *Federal Deposit Ins. Corp.,* 315 U. S. 447; *Royal Indemnity Co.* v. *United States,* 313 U. S. 289; *Board of Comm'rs* v. *United States,* 308 U. S. 343.  See also discussion in Hart and Wechsler, The Federal Courts and the Federal System, 679 *et seq.*

[15] Hearings before House Committee on the Judiciary on H. R. 5373 and H. R. 6463, 77th Cong., 2d Sess.; S. Rep. No. 1196, 77th Cong., 2d Sess.; H. R. Rep. No. 2245, 77th Cong., 2d Sess.; No. 1287, 79th Cong., 1st Sess.

[16] See, *e. g.,* 68 Harv. L. Rev. 1455 (1955); 45 Iowa L. Rev. 125 (1959); 6 N. Y. L. F. 484, 488–490 (1960).

[17] See H. R. Rep. No. 2428, 76th Cong., 3d Sess. 3; Hearings on H. R. 5373 and H. R. 6463, note 15, *supra,* 39, 66; Hearings before a Subcommittee of the House Committee on the Judiciary on H. R. 7236, 76th Cong., 3d Sess. 7, 16; Hearings before a Subcommittee of the Senate Committee on the Judiciary on S. 2690, 76th Cong., 3d Sess. 9; 69 Cong. Rec. 2192, 2193, 3118; 86 Cong. Rec. 12024.

rarely involving a conflict-of-laws question.[18]   In these instances, where the negligence and the injury normally occur simultaneously and in a single jurisdiction, the law to be applied is clear, and no solution to the meaning of the words "the law of the place where the act or omission occurred" is required.   Here, however, we are faced with events touching more than one "place"—a problem which Congress apparently did not explicitly consider—and, thus, we are compelled to give content to those critical words.

In the Tort Claims Act Congress has expressly stated that the Government's liability is to be determined by the application of a particular law, the law of the place where the act or omission occurred,[19] and we must, of course, start with the assumption that the legislative purpose is expressed by the ordinary meaning of the words used.   We believe that it would be difficult to conceive of any more precise language Congress could have used to command application of the law of the place where the negligence occurred than the words it did employ in the Tort Claims Act.   Thus we first reject the alternative urged by American Airlines.   The legislative materials cited to us by American [20] not only lack probative force

---

[18] See, e. g., Knecht v. United States, 242 F. 2d 929; Irish v. United States, 225 F. 2d 3; United States v. Praylou, 208 F. 2d 291; Somerset Seafood Co. v. United States, 193 F. 2d 631; D'Anna v. United States, 181 F. 2d 335; Olson v. United States, 175 F. 2d 510; Modla v. United States, 151 F. Supp. 198; Irvin v. United States, 148 F. Supp. 25.

[19] 28 U. S. C. § 1346 (b).

[20] Hearings before House Committee on the Judiciary on H. R. 5373 and H. R. 6463, 77th Cong., 2d Sess. 9, 30.   American suggests that support for its argument is found in the testimony of Mr. Francis Shea, then Assistant Attorney General of the United States, before the House Committee on the Judiciary, who stated, when asked where a claimant might bring suit under the Act, that the venue

in a judicial sense, but they are completely unpersuasive to support the argument that Congress intended the words "act or omission" to refer to the place where the negligence had its operative effect. The ease of application inherent in the rule urged by American lends a certain attractiveness, but we are bound to operate within the framework of the words chosen by Congress and not to question the wisdom of the latter in the process of construction. We conclude that Congress has, in the Tort Claims Act, enacted a rule which requires federal courts, in multistate tort actions, to look in the first instance to the law of the place where the acts of negligence took place.

## III.

However, our task is not completed. Having rejected the third alternative stated initially as inconsistent with the express terminology of the Act, we must now determine the reach of the words "law of the place." Do they embrace the whole law of the place where the negligence occurred, or only the internal law of that place? This problem, unlike the initial question discussed under II, *supra,* has not been dealt with by any formal expression of Congress and we must therefore establish the rule to be applied uniformly by lower federal courts, with due regard to the variant interests and policies expressed by the Tort Claims Act legislation.

---

provision allowed suit to be brought either where the claimant resides or where the injury took place. Because the venue provision of the Act also contains the words "wherein the act or omission complained of occurred" (28 U. S. C. § 1402 (b)), American contends that the reference to the place where the injury occurred should control the meaning of the "act or omission" language in Section 1346 (b). In addition to the fact that this testimony bears no relation to the choice-of-laws problems, and that considerations underlying the problem of venue are substantially different from those determining applicable law, we are not persuaded to allow an isolated piece of legislative history to detract from the Act the words Congress expressly employed.

We believe it fundamental that a section of a statute should not be read in isolation from the context of the whole Act,[21] and that in fulfilling our responsibility in interpreting legislation, "we must not be guided by a single sentence or member of a sentence, but [should] look to the provisions of the whole law, and to its object and policy."[22] We should not assume that Congress intended to set the courts completely adrift from state law with regard to questions for which it has not provided a specific and definite answer in an act such as the one before us which, as we have indicated, is so intimately related to state law. Thus, we conclude that a reading of the statute as a whole, with due regard to its purpose, requires application of the whole law of the State where the act or omission occurred.

We are led to our conclusion by other persuasive factors notwithstanding the fact that the very conflict among the lower federal courts that we must here resolve illustrates the also reasonable alternative view expressed by the petitioners. First, our interpretation enables the federal courts to treat the United States as a "private individual under like circumstances," and thus is consistent with the Act considered as a whole.[23] The general conflict-of-laws rule, followed by a vast majority of the States,[24] is to apply the law of the place of injury to the

---

[21] *Labor Board* v. *Lion Oil Co.,* 352 U. S. 282, 288; *Cherokee Intermarriage Cases,* 203 U. S. 76, 89; *Panama Refining Co.* v. *Ryan,* 293 U. S. 388, 439 (Cardozo, J., dissenting).

[22] *Mastro Plastics Corp.* v. *Labor Board,* 350 U. S. 270, 285, quoting from *United States* v. *Boisdoré's Heirs,* 8 How. 113, 122.

[23] 28 U. S. C. § 2674, quoted in the text, *supra,* as well as 28 U. S. C. § 1346 (b), provides that the United States should be treated as an individual defendant would be under like circumstances.

[24] Restatement, Conflict of Laws, §§ 377, 378 and 391. This rule has been repeated so frequently that a citation of cases here would serve no purpose. For a collection of cases, see Goodrich, Conflict

substantive rights of the parties. Therefore, where the forum State is the same as the one in which the act or omission occurred, our interpretation will enable the federal courts to treat the United States as an individual would be treated under like circumstances.[25] Moreover, this interpretation of the Act provides a degree of flexibility to the law to be applied in federal courts that would not be possible under the view advanced either by the petitioners or by American. Recently there has been a tendency on the part of some States to depart from the general conflicts rule in order to take into account the interests of the State having significant contact with the parties to the litigation.[26] We can see no compelling reason to saddle the Act with an interpretation that would

of Laws, 263–264; Stumberg, Conflict of Laws, 182–187; 25 C. J. S. *Death* § 28, nn. 27–30.

[25] For example, had the petitioners in the instant case brought suit against American as well as the United States, the petitioners' interpretation of the Act would have the District Court determine American's liability by the law of Missouri and the United States' by the law of Oklahoma. Under our construction of the Act, however, both defendants' liability would be determined by the law of Missouri. However, because of the venue provision in the statute, allowing suit to be brought where all the plaintiffs reside as well as where the act or omission occurred (28 U. S. C. § 1402 (b); see *Knecht* v. *United States*, 242 F. 2d 929; *Olson* v. *United States*, 175 F. 2d 510), a situation may arise where a District Court could not determine the Government's and a private individual's liability in exactly the same manner.

[26] *Grant* v. *McAuliffe*, 41 Cal. 2d 859, 264 P. 2d 944; *Schmidt* v. *Driscoll Hotel, Inc.*, 249 Minn. 376, 82 N. W. 2d 365; *Haumschild* v. *Continental Casualty Co.*, 7 Wis. 2d 130, 95 N. W. 2d 814. See Currie, Survival of Actions: Adjudication versus Automation in the Conflict of Laws, 10 Stan. L. Rev. 205 (1958). Cf. *Vrooman* v. *Beech Aircraft Corp.*, 183 F. 2d 479; *Levy* v. *Daniels' U-Drive Auto Renting Co.*, 108 Conn. 333, 143 A. 163; *Caldwell* v. *Gore*, 175 La. 501, 143 So. 387; *Burkett* v. *Globe Indemnity Co.*, 182 Miss. 423, 181 So. 316.

prevent the federal courts from implementing this policy in choice-of-law rules where the State in which the negligence occurred has adopted it. Should the States continue this rejection of the older rule in those situations where its application might appear inappropriate or inequitable,[27] the flexibility inherent in our interpretation will also be more in step with that judicial approach, as well as with the character of the legislation and with the purpose of the Act considered as a whole.

In the absence of persuasive evidence to the contrary, we do not believe that Congress intended to adopt the inflexible rule urged upon us by the petitioners. Despite the power of Congress to enact for litigation of this type a federal conflict-of-laws rule independent of the States' development of such rules, we should not, particularly in the type of interstitial legislation involved here, assume that it has done so. Nor are we persuaded to require such an independent federal rule by the petitioners' argument that there are other instances, specifically set forth in the Act,[28] where the liability of the United States is not co-ex-

---

[27] In addition to the cases cited in note 26, *supra*, see the opinion by MR. JUSTICE BLACK in *Vanston Bondholders Protective Committee* v. *Green,* 329 U. S. 156, 161–162, where it is stated in context to a different but analogous problem:

"In determining which contact is the most significant in a particular transaction, courts can seldom find a complete solution in the mechanical formulae of the conflicts of law. Determination requires the exercise of an informed judgment in the balancing of all the interests of the states with the most significant contacts in order best to accommodate the equities among the parties to the policies of those states."

[28] The Act permits claimants to sue only in the federal courts, and not in the state courts which are available in actions against a private individual, § 1346 (b); the Act prescribes its own period of limitations which may be shorter or longer than that of the State, § 2401 (b); the claimant cannot obtain a trial by jury under the Act, although he could against a private individual, § 2402; the claimant cannot obtain interest prior to judgment in suits under the

tensive with that of a private person under state law. It seems sufficient to note that Congress has been specific in those instances where it intended the federal courts to depart completely from state law and, also, that this list of exceptions contains no direct or indirect modification of the principles controlling application of choice-of-law rules. Certainly there is nothing in the legislative history that even remotely supports the argument that Congress did not intend state conflict rules to apply to multistate tort actions brought against the Government.[29]

Act regardless of the state rule governing private individuals, § 2674; the claimant cannot obtain punitive damages under the Act, even though state law may provide for it as against a private defendant, § 2674; the claimant cannot recover any damages against the United States on any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights, whereas he could recover such damages against a private individual, § 2680 (h); the claimant cannot obtain any recovery against the United States on a claim arising in a foreign country, although he could against a private individual, § 2680 (k); and the Act exempts the Government from liability for claims based on various types of activities, although a private individual would be liable in the same circumstances, § 2680.

[29] In fact, despite the ambiguity that exists in the history due to the fact that Congress did not specifically consider the choice-of-laws problem, the legislative material indicates that Congress thought in terms of state law being applicable. The term "law of the place where the act or omission occurred" was particularized as (1) the law of the situs of the wrongful act or omission. Hearings before House Committee on the Judiciary on H. R. 5373 and H. R. 6463, 77th Cong., 2d Sess. 35; (2) local law, *id.*, at 26, 27, 30, 59 and 61; S. Rep. No. 1196, 77th Cong., 2d Sess. 6; H. R. Rep. No. 2245, 77th Cong., 2d Sess. 9; H. R. Rep. No. 1287, 79th Cong., 1st Sess. 4; S. Rep. No. 1400, 79th Cong., 2d Sess. 32; (3) local tort law. Hearings before House Committee on the Judiciary on H. R. 5373 and H. R. 6463, 77th Cong., 2d Sess. 30; (4) the law of the situs of the alleged tort. Hearings before a Subcommittee of the Senate Committee on

Under our interpretation of the Act we find it unnecessary to judge the effect of the Oklahoma courts' pronouncements that the Oklahoma Wrongful Death Act cannot be given extraterritorial effect.[30]

## IV.

Our view of a State's power to adopt an appropriate conflict-of-laws doctrine in a situation touching more than one place has been indicated by our discussion in Part III of this opinion.[31] Where more than one State has sufficiently substantial contact with the activity in question, the forum State, by analysis of the interests possessed by the States involved, could constitutionally apply to the decision of the case the law of one or another state having such an interest in the multistate activity.[32] Thus, an Oklahoma state court would be free to apply either its own law, the law of the place where the negligence occurred, or the law of Missouri, the law of the place where the injury occurred, to an action brought in its courts and involving this factual situation.[33] Both the

the Judiciary on S. 2690, 76th Cong., 3d Sess. 44; and (5) the locale of the injury or damage. Hearings before the House Committee on the Judiciary on H. R. 5373 and H. R. 6463, 77th Cong., 2d Sess. 9.

[30] *Gochenour* v. *St. Louis-San Francisco R. Co.*, 205 Okla. 594, 239 P. 2d 769. See *Fenton* v. *Sinclair Refining Co.*, 206 Okla. 19, 240 P. 2d 748.

[31] *Supra*, pp. 12–13 and cases cited. See also *Carroll* v. *Lanza*, 349 U. S. 408; *Watson* v. *Employers Liability Corp.*, 348 U. S. 66; *Pacific Employers Ins. Co.* v. *Industrial Accident Comm'n*, 306 U. S. 493. Cf. *Hartford Accident & Indemnity Co.* v. *Delta & Pine Land Co.*, 292 U. S. 143; *Home Insurance Co.* v. *Dick*, 281 U. S. 397.

[32] See, *e. g.*, the cases cited in note 26, *supra*.

[33] *Alabama G. S. R. Co.* v. *Carroll*, 97 Ala. 126, 11 So. 803; *Otey* v. *Midland Valley R. Co.*, 108 Kan. 755, 197 P. 203; *Connecticut Valley Lumber Co.* v. *Maine Central R. Co.*, 78 N. H. 553, 103 A. 263; *El Paso & N. W. R. Co.* v. *McComus*, 36 Tex. Civ. App. 170, 81 S. W. 760 (holding that the law of the place of injury controls) and

Federal District Court sitting in Oklahoma, and the Court of Appeals for the Tenth Circuit, have interpreted the pertinent Oklahoma decisions,[34] which we have held are controlling, to declare that an action for wrongful death is based on the statute of the place where the injury occurred that caused the death.[35] Therefore, Missouri's statute controls the case at bar. It is conceded that each petitioner has received $15,000, the maximum amount recoverable under the Missouri Act, and the petitioners thus have received full compensation for their claims. Accordingly, the courts below were correct in holding that, in accordance with Oklahoma law, petitioners had failed to state claims upon which relief could be granted. The judgment is

*Affirmed.*

---

*Schmidt* v. *Driscoll Hotel, Inc.*, 249 Minn. 376, 82 N. W. 2d 365 (holding that the law of the place of negligence controls). See also *Hunter* v. *Derby Foods*, 110 F. 2d 970; 35 Col. L. Rev. 202.

[34] *Gochenour* v. *St. Louis-San Francisco R. Co.*, 205 Okla. 594, 239 P. 2d 769; *Miller* v. *Tennis*, 140 Okla. 185, 282 P. 345. See *Fenton* v. *Sinclair Refining Co.*, 206 Okla. 19, 240 P. 2d 748.

[35] We are aware that in the Oklahoma cases cited in note 34, *supra,* both the injury and negligence occurred in the same sister State, and that the two courts below relied largely on dictum in those cases to conclude that Oklahoma would follow the general rule that the law of the place of injury would control even had the negligence that caused the injury taken place in Oklahoma. The petitioners here do not contend that this was an erroneous interpretation of state law. We ordinarily accept the determinations of Courts of Appeals on questions of state law and do so here under the circumstances presented. *General Box Co.* v. *United States*, 351 U. S. 159, 165; *Estate of Spiegel* v. *Commissioner*, 335 U. S. 701, 707–708; *Huddleston* v. *Dwyer*, 322 U. S. 232, 237.