**Ben McENTEER, Secretary of Banking, Commonwealth of Pennsylvania**

**v.**

**Robert L. CLARKE, Comptroller of the Currency of the United States of America; Bank of New Jersey, N.A., a national banking association; and Horizon Bancorp, a bank holding company.**

Civ. A. No. 86–3631.

United States District Court, E.D. Pennsylvania.

June 27, 1986.

Michael L. Harvey, Deputy Atty. Gen., Harrisburg, Pa., for plaintiff.

J. Dennis Faucher, Saul, Ewing, Remick & Saul, Philadelphia, Pa., for Horizon Bank of Pennsylvania, Nat. Ass'n.

Elizabeth Pugh, U.S. Dept. of Justice, Civil Div., Washington, D.C., for Robert L. Clarke, Comptroller of the Currency of the U.S. of America.

## MEMORANDUM AND ORDER

KATZ, District Judge.

1. This is the first case to determine whether to set aside a decision of the Comptroller of the Currency of the United States of America allowing the relocation across state lines of the main office of a national bank. 5 U.S.C.A. § 702 et seq. (West 1972).

2. On May 13, 1986, the Comptroller granted the request of the Bank of New Jersey, a national bank, which is a subsidiary of Horizon Bancorp, a New Jersey bank holding company, to relocate its main office from Moorestown, New Jersey to Philadelphia, Pennsylvania. The Bank moved for legitimate business reasons to be active in the Philadelphia market.

3. Plaintiff Ben McEnteer, Secretary of the Pennsylvania Department of Banking, has moved for a preliminary injunction in this matter.

4. This Court has jurisdiction of the subject matter of this action pursuant to 28 U.S.C.A. § 1331 (West Supp.1976), as this action arises under the National Bank Act, 12 U.S.C.A. § 21 et seq. (West 1980 & Supp.1986) and under the Bank Holding Company Act, 12 U.S.C.A. § 1841 et seq. (West 1980 & Supp.1986).

5. Venue in this district is proper under 28 U.S.C.A. § 1391(b) and (e) (West 1976 & Supp.1986).

6. Plaintiff is responsible for the administration of the Pennsylvania Banking Code. Pa.Stat.Ann. tit. 7, §§ 101–2204 (Purdon 1967 & Supp.1985). Plaintiff is specifically authorized to enforce Section 115 of the Pennsylvania Banking Code. See Id. at § 115(c). As the state official responsible for effectuating state banking policy, plaintiff has standing to enforce the applicable provisions of the National Bank Act and the Bank Holding Company Act.

7. Defendant Robert L. Clarke is named in his official capacity as the Comptroller of the Currency of the United States of America. The Comptroller is responsible for the supervision and regulation of national banks chartered under the National Bank Act.

8. The Bank of New Jersey, N.A., ("the New Jersey Bank") is a banking association duly incorporated under the laws of the United States and authorized to engage in the business of banking under the National Bank Act. The Bank of New Jersey changed its name to Horizon Bank of Pennsylvania, N.A., on May 30, 1986. The main and only office of the New Jersey bank is

currently located at 226 Rittenhouse Square, Philadelphia, Pennsylvania.

9. Horizon Bancorp is a bank holding company incorporated under the laws of New Jersey. The operations of Horizon Bancorp's banking subsidiaries are principally conducted in New Jersey. The main office of Horizon Bancorp is located at 334 Madison Avenue, Morristown, New Jersey.

10. On May 6, 1985, the New Jersey bank, made application to the Comptroller to relocate its main and only office from 312 West Route 38, Moorestown, New Jersey, to 226 Rittenhouse Square, Philadelphia, Pennsylvania, a distance of approximately 11½ miles.

11. On June 5, 1985, the Pennsylvania Department of Banking filed a timely comment letter with the Comptroller of the Currency in opposition to Bank of New Jersey's relocation. The Department stated in its letter that: (a) Section 30 of the National Bank Act does not permit interstate relocation of a main office (12 U.S.C.A. § 30); (b) the Commissioner's approval of the relocation would violate section 1842(d) of the Bank Holding Company Act (12 U.S.C.A. § 1842(d) (the "Douglas Amendment"); and (c) approval would violate section 115 of the Pennsylvania Banking Code, Pa.Stat.Ann. tit. 7, § 115 (Purdon Supp.1985).

12. By decision dated May 13, 1986, signed by Judith A. Walter, Senior Deputy Comptroller for National Operations, the Comptroller granted the application of the New Jersey bank to relocate its sole banking office from Moorestown, New Jersey to Philadelphia, Pennsylvania.

13. The Comptroller ruled that section 30(b) of the National Bank Act (12 U.S.C.A. § 30(b)), rather than state law, controlled in this matter and that this statute allowed the interstate relocation of a main office, based on a reading of that statute as amended in 1959 and in 1982 and 1983. Decision of the Comptroller of the Currency on the Application of the Bank of New Jersey, National Association, Moorestown, New Jersey, to Relocate Its Main Office to Philadelphia, Pennsylvania, at 6–9.

14. The Comptroller ruled that section 1842(d) of the Bank Holding Company Act (12 U.S.C.A. § 1842(d)) was inapplicable to the facts of this case. Decision of the Comptroller, at 6–9.

15. In addition, the Comptroller ruled that even if state law, rather than federal law, applied to this case, the Pennsylvania statute at issue (Pa.Stat.Ann. tit. 7, § 115) probably violated the Commerce Clause and thus would not withstand constitutional scrutiny. Decision of the Comptroller, at 10–14.

16. The New Jersey bank, in light of the Comptroller's decision, opened its office in Philadelphia, Pennsylvania on May 23, 1986.

17. Plaintiff contends that the decision of the Comptroller is unlawful for the same reasons raised in its letter of opposition to the Comptroller.

18. Plaintiff, in this proceeding, has moved for a preliminary injunction (a) to enjoin the New Jersey bank from conducting business in Philadelphia, Pennsylvania; (b) to enjoin Horizon Bancorp from owning or controlling any bank in Pennsylvania; and (c) to enjoin the Comptroller from taking any action to implement or enforce the decision approving the relocation.

19. For the reasons set forth below, the motion for a preliminary injunction is DENIED.

20. Before a district court may issue a preliminary injunction it must consider whether the movant has shown that it is likely to prevail on the merits, whether the movant has shown irreparable harm in the absence of such relief, whether such relief will substantially harm other parties, and where the public interest lies. *Premier Dental Products Co. v. Darby Dental Supply Co.*, 794 F.2d 850, 852 (3rd Cir. 1986). *See Continental Group, Inc. v. Amoco Chemicals Corp.*, 614 F.2d 351, 356–57 (3d Cir.1980), *Thermice Corp. v. Vistron Corp.*, 473 F.Supp. 1226, 1230 (E.D.Pa.1979).

**914**

21. Plaintiff has not met his burden in this matter. The likelihood of success on the merits is too slim to justify protecting Pennsylvania banks from competition at the expense of prohibiting the New Jersey bank from conducting its business in Philadelphia. In addition, granting injunctive relief would be against the public interest in competition and service.

■ 22. Section 30(b) of the National Bank Act provides in part as follows:

> Any national banking association, upon written notice to the Comptroller of the Currency may change the location of the main office ... with a vote of the shareholders owning two-thirds of the stock of such association ... and upon receipt of a certificate of approval from the Comptroller of the Currency, to any ... location within or outside the limits of the city, town, or village in which it is located, but not more than 30 miles beyond such limits.

12 U.S.C.A. § 30(b) (West Supp.1986).

23. Since the bank has obtained the required shareholder approval, this statute permits the Comptroller of the Currency to approve the New Jersey bank's relocation of its main office from Moorestown, New Jersey, to Philadelphia, Pennsylvania, a distance of about 11½ miles. Decision of the Comptroller, at 3.

24. Section 30(b) was amended in 1959 to delete the requirement that such a move be "within the same state." Act of September 8, 1959, Pub.L. No. 86–230, § 3, 73 Stat. 457. *See* Act of May 1, 1886, ch. 73, § 2, 24 Stat. 18.

25. The statute was also amended in 1982 and 1983, but the interstate restriction was not re-inserted. *See* Garn-St. German Depository Institution Act of 1982, Pub.L. No. 97–320, tit. IV, part A, § 405(a), 96 Stat. 1512 (October 15, 1982); Act of January 12, 1983, Pub.L. No. 97–457, § 19(a), 96 Stat. 2509.

26. The plain language of the statute allows national banks to relocate "to any other location" within 30 miles of the limits of the city, town, or village within which it is currently located. The proposed relocation complies with that requirement, and I will apply the plain language of the statute. There is no ambiguity in the statute. *See Richards v. United States*, 369 U.S. 1, 9, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962); *Caminetti v. United States*, 242 U.S. 470, 485–86, 37 S.Ct. 192, 194–95, 61 L.Ed. 442 (1917).

27. Plaintiff's second contention is that the Comptroller is not authorized to approve a relocation across state lines because such a relocation violates the Douglas Amendment to the Bank Holding Act. 12 U.S.C.A. § 1842(d).

28. The Douglas Amendment provides as follows:

> Notwithstanding any other provision of this section, no application (except an application filed as a result of a transaction authorized under section 1823(f) of this title) shall be approved under this section which will permit any bank holding company or any subsidiary thereof to *acquire*, directly or indirectly, any voting shares of, interest in, or all or substantially all of the assets of any additional bank located outside of the State in which the operations of such bank holding company's banking subsidiaries were principally conducted on July 1, 1966, or the date on which such company became a bank holding company, whichever is later, unless the *acquisition* of such shares or assets of a State bank by an out-of-State bank holding company is specifically authorized by the statute laws of the State in which such bank is located, by language to that effect and not merely by implication. For the purposes of this section, the State in which the operations of a bank holding company's subsidiaries are principally conducted is that State in which total deposits of all such banking subsidiaries are largest.

12 U.S.C.A. 1842(d)(West Supp.1986) (emphasis added).

■ 29. On this record plaintiffs have not shown that the transaction in question constitutes an "acquisition" for purposes of the Douglas Amendment. *See Northeast*

*Bancorp v. Board of Governors of Federal Reserve System*, — U.S. —, 105 S.Ct. 2545, 2548, 86 L.Ed.2d 112 (1985). The Douglas Amendment does not apply to the relocation of the main office of a banking corporation that is the subsidiary of a bank holding company.

30. In addition, the law in this circuit is that section 30(b) of the National Bank Act "controls with respect to any application for a national bank's main office relocation free of impact of state banking laws or policy...." *Ramapo Bank v. Camp*, 425 F.2d 333, 344 (3rd Cir.), *cert. denied*, 400 U.S. 828, 91 S.Ct. 59, 27 L.Ed.2d 58 (1970). *But see Marion National Bank v. Van Buren Bank*, 418 F.2d 121 (7th Cir.1969). *See* 12 U.S.C.A. § 30(b).

31. Plaintiff's third contention is that the Comptroller's action violated section 115 of the Pennsylvania Banking Code, Pa. Stat.Ann. tit. 7, § 115 (Purdon Supp.1985). Section 115(b)(i), provides that "[n]o bank holding company other than a Pennsylvania bank holding company may control an institution." *Id.* at § 115(b)(i).

32. Section 115(a)(i) defines a "bank holding company" as "a company, as defined by the Federal Bank Holding Company Act ..., which is or becomes a bank holding company within the provisions of the Federal act including, without limitation, its provisions determining what constitutes control." *Id.* at § 115(a)(i).

33. Horizons Bancorp. is a "bank holding company" under this statute.

34. Section 115(a)(ii) defines an "institution" as "a national bank whose principal place of business is located in Pennsylvania or a bank or bank and trust company." *Id.* at § 115(a)(ii).

35. The New Jersey bank is an "institution" under that provision.

36. Section 115(a)(iii) defines a "Pennsylvania bank holding company" as one "whose banking subsidiaries' operations are principally conducted in this State as determined by ... total deposits...." *Id.* at § 115(a)(iii). Horizon Bancorp is not a Pennsylvania bank holding company under this statute.

37. Section 115, therefore, purports to make unlawful the relocation of the New Jersey bank.

38. Defendants contend, however, that the Pennsylvania statute violates the Commerce Clause of the United States Constitution. U.S. Const. art. 1, § 8, cl. 3 (West 1968).

39. The Commerce Clause "prohibits a state from using its regulatory power to protect its own citizens from outside competition." *Lewis v. BT Investment Managers, Inc.*, 447 U.S. 27, 44, 100 S.Ct. 2009, 2019, 64 L.Ed.2d 702 (1980). The issue is whether the practical effect of the Pennsylvania statute can be justified as necessitated by legitimate local concerns which outweigh the values protected by the Commerce Clause. *Edgar v. Mite*, 457 U.S. 624, 625, 102 S.Ct. 2629, 2632, 73 L.Ed.2d 269 (1982). Plaintiff's showing at this point is not convincing. *See* Decision of the Comptroller, at 10–14. State action here is unauthorized by Congress. *See Northeast Bancorp. Inc. v. Board of Governors*, 105 S.Ct. 2545, 2553–2554 (1985). In fact, Plaintiff's Brief concedes: "Absent Congressional authorization, it is clear that prohibitions on the acquisition or control of local banks by out-of-state holding companies would be barred by the Commerce Clause." Brief in Support of Motion for Preliminary Injunction, at 8.

40. Plaintiff has not made a substantial showing at this point that the Comptroller's decision is arbitrary, capricious, an abuse of discretion or unsupported by substantial evidence. *Ramapo Bank v. Camp*, 425 F.2d at 344.

41. The notion that this New Jersey bank's competition causes irreparable harm to Pennsylvania banks is also unpersuasive when viewed in the perspective of interstate banking competition foreseeable from the interstate banking legislation signed by Pennsylvania's governor on June 25, 1986. *See* S. 1075, Session of 1985, Printer's No.

2217 (1986) (amending Pa.Stat.Ann. tit. 7, § 115).

42. Enjoining the activity of the New Jersey bank at this stage would not serve the public interest in increased competition among banks.

43. For the foregoing reasons, I find that plaintiff has not shown that it is likely to prevail on the merits; nor has it shown irreparable harm. On the other hand, granting the preliminary injunction would substantially harm the New Jersey bank and the public interest.

44. Accordingly, plaintiff's motion for a preliminary injunction is DENIED.

### ORDER

AND NOW, this 27th day of June, 1986, after a hearing in this matter, Plaintiff's Motion for Preliminary Injunction is DENIED for the reasons set forth in the accompanying Memorandum.

1. Plaintiff has not shown that he is likely to prevail on the merits, nor has he shown irreparable harm. On the other hand, granting the preliminary injunction would substantially harm the New Jersey bank and the public interest. Further, there has been no persuasive showing of immediate irreparable harm or presently existing actual threat of harm or imminent harm to the plaintiff, Pennsylvania banks or Pennsylvania bank customers. *Premier Dental Products Co. v. Darby Dental Supply Co.*, 794 F.2d 850, 852, 854 (3rd Cir.1986). *See Cerro Metal Products v. Marshall*, 620 F.2d 964, 965, 972 (3rd Cir. 1980), *Thermice Corp. v. Vistron Corp.*, 473 F.Supp. 1226, 1230 (E.D.Pa.1979).

2. Discovery shall be completed by July 31, 1986. A complete stipulation of all agreed facts shall be filed by August 8, 1986. All Motions for Summary Judgment shall be filed by August 15, 1986. Responses to the Motions for Summary Judgment shall be filed by August 29, 1986. Reply briefs shall be filed by September 5, 1986.

3. The case shall be placed in the trial pool on September 12, 1986 to try any genuine disputes of material fact.