**Opal Neighbors DIMITRY, Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

**No. 89–4584 Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

Dec. 21, 1989.

---

Anthony J. Bruscato, Bruscato, Loomis & Street, Monrle, La., for plaintiff-appellant.

John R. Halliburton, Asst. U.S. Atty., Joseph S. Cage, Jr. U.S. Atty., Shreveport, La., for defendant-appellee.

Before REAVLEY, KING and JOHNSON, Circuit Judges.

REAVLEY, Circuit Judge:

Plaintiff Opal Neighbors Dimitry brought this federal tort action against the United States of America for the alleged wrongful death of her husband, Mitchell James Dimitry, while he was a patient at the Veteran's Administration Medical Center in Shreveport, Louisiana ("VA"). The district court dismissed the suit on the ground that the plaintiff had failed to prove that the negligence of the VA employees was the cause in fact of the decedent's death. We affirm.

## I. Background

Mr. Dimitry, a sixty four year old gentleman, was plagued in 1985 by a variety of serious health problems. In June of that year, he was admitted in a semi-comatose condition to St. Francis Medical Center in Monroe, Louisiana, where he was treated for severe diabetes mellitus, coronary artery disease, left ventricular failure, and chronic anemia. He was further diagnosed as suffering from bilateral pneumonia, pulmonary fibrosis, and gastritis with gastrointestinal hemorrhage. Although discharged on June 20, he was readmitted on June 22 in a comatose condition and found to have a large pituitary tumor.

He subsequently was transferred to the VA for treatment, which initially improved his neurological status significantly. Two neurosurgical procedures were performed to remove the tumor. However, after the second surgery on August 15, Mr. Dimitry's mental status again deteriorated. He apparently had a stroke, which left him paralyzed on the right side, and while recuperating in the Surgical Intensive Care Unit ("S.I.C.U.") he also suffered respiratory distress, necessitating a tracheostomy and the use of a ventilator.[1] Mr. Dimitry subsequently was weaned off the ventilator and was transferred from the S.I.C.U. to Ward 5 West on September 13.

The pituitary gland, which was removed during surgery, produces vasopressin, a hormone that regulates urine output. Without vasopressin, the body will excrete large volumes of urine. If prolonged, this leads to dehydration and hypernatremia, a condition in which high levels of sodium are concentrated in the blood. To avoid this problem, Mr. Dimitry was to receive DDAVP, a synthetic version of vasopressin. However, after the transfer from the

---

1. A tracheostomy is a surgical formation of an opening into the trachea through the neck and is performed to allow the passage of air when obstructed above that point. A ventilator is used to mechanically provide air to a patient who cannot breathe on his own.

S.I.C.U., he did not receive the DDAVP for two days, September 14 and 15.[2] On September 16, it was discovered that since his last dose, Mr. Dimitry had lost approximately 6 liters of fluid and 12.8 pounds of weight. Additionally, his blood sodium level had climbed to a very high level, 167 meq/L.[3]

On the 16th Mr. Dimitry was given a dose of DDAVP and was given an additional two liters of fluid for rehydration. His sodium level was reduced to 158 meq/L by that evening. He was last seen by a physician at approximately 11:00 p.m. for an elevated temperature and his wife left his side at about 11:30 p.m. At approximately 1:20 a.m. on September 17, he was found without respirations. After an unsuccessful attempt at resuscitation, Mr. Dimitry was pronounced dead. His family declined to have an autopsy done to determine the cause of death.

Plaintiff brought this wrongful death action against the United States of America under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), claiming that the VA employees negligently caused the death of her husband in failing to administer the DDAVP medication as prescribed.[4] The case was tried before the district judge, who found that the VA employees were negligent and did commit malpractice in failing to give Mr. Dimitry his medication. Yet, because he also found that the plaintiff had failed to establish the requisite causation, the judge dismissed the claim with prejudice pursuant to rule 41(b). Plaintiff claims the district court erred in two ways: (1) in holding that the negligent acts of the VA employees were not the cause in fact of Mr. Dimitry's death; and (2) by refusing to admit certain medical treatises into evidence.

## II. Discussion

### A. *Applicable Law*

■ Under the Federal Tort Claims Act, the controlling substantive law is provided by the state where the negligent act occurred, which in this case is Louisiana. *See Richards v. United States*, 369 U.S. 1, 10–11, 82 S.Ct. 585, 591–92, 7 L.Ed.2d 492 (1962). To meet the causation requirement in a malpractice action under Louisiana law, a plaintiff must prove "that the defendant's actions were a substantial cause in fact of the injury," *see Smith v. State Through the Dep't of Health & Human Resources Admin.*, 523 So.2d 815, 819 (La. 1988), and that as a "proximate result" of the defendant's actions "the plaintiff suffered injuries that would not otherwise have been incurred," La.Rev.Stat.Ann. § 9:2794(A)(3) (West Supp.1989). In cases in which a patient has died, the plaintiff need not show that the patient would have lived if properly treated. Rather, the plaintiff need show " 'only that there would have been a chance of survival,' and that the patient was denied this chance of survival because of the defendant's negligence." *Smith*, 523 So.2d at 820 (quoting *Hastings v. Baton Rouge Gen. Hosp.*, 498 So.2d 713, 720 (La.1986)).

The district court's determination of the cause of the injury is factual and therefore is reviewed for clear error. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); *Smith*, 523 So.2d at 822.

### B. *District Court Decision*

■ During a two day trial, the district court heard testimony from five physicians, four of whom had treated Mr. Dimitry and one of whom was called by the government as an expert witness. All five of these physicians testified that in their opinion the

---

**2.** There is some dispute about whether he received a dose on the 14th. His physician, however, determined that even if he did get it, it was not administered correctly and was therefore ineffective.

**3.** Sodium is measured in milliequivalents per liter and the normal value is between 135 and 145 meq/L.

**4.** The original complaint also claimed that the decedent was deprived of essential oxygen when the oxygen line from the tracheostomy collar was disconnected. However, the plaintiff failed to show that the oxygen was disconnected at the time of Mr. Dimitry's death or that the oxygen was necessary for his survival, given that he was no longer on a ventilator.

failure to give the DDAVP had not caused Mr. Dimitry's demise. It was pointed out that there was no way to be sure of the cause without an autopsy. However, because Mr. Dimitry did not exhibit the primary symptoms indicating that his dehydration or hypernatremia had reached life threatening levels and because he had been rehydrated, they testified that the pneumonia, a heart attack, or a second stroke was the more likely cause of death.

Plaintiff did not produce any witness to contradict the testimony of these physicians. She merely sought to introduce into evidence medical treatises with data showing a greater than 70 percent mortality rate among untreated patients with a sodium blood level exceeding 160 meq/L. Although the district judge declined to admit the treatises as irrelevant, the plaintiff was permitted to read the relevant passages into evidence. The district court, however, indicated that this evidence was insufficient to meet the plaintiff's burden of proof.

We find no clear error. According to the evidence, at the time of Mr. Dimitry's death he had been rehydrated and his sodium level had been reduced below 160 meq/L. There was no evidence of risks associated with lower sodium levels; thus, the study's data arguably was inapplicable. Moreover, the trier of fact is entitled to weigh conflicting evidence. There can be no clear error in choosing testimony of physicians familiar with a particular case over statistical data from a study merely suggesting general probabilities.

Plaintiff argues that because she has shown that high mortality rates are associated with high sodium levels, the defendant must negate the inference that its negligence caused Mr. Dimitry's death. This is in essence an argument that the res ipsa loquitur doctrine should come into play. Under Louisiana law, however, "[r]es ipsa loquitur applies when 'circumstances suggest the defendant's negligence as the most plausible explanation for the injury.'" *Id.* at 822 (quoting *Gonzales v. Winn–Dixie La., Inc.*, 326 So.2d 486, 489 (La.1976)). As the evidence indicates that the defendant's negligence was the least likely cause

of Mr. Dimitry's death, that doctrine does not apply here. *See id.* at 822–23.

Although the district court found the VA was negligent in not giving the medication, the only injury it found supported by the record was that Mr. Dimitry was dehydrated and thirsty, "if he was even aware of it." Thus, finding no compensable injury, the court dismissed the case. As the plaintiff did not show that the omission of the medication was a substantial cause of the decedent's death or that it denied him a chance of survival, we find nothing to disturb the judgment.

AFFIRMED.