851 F.Supp. 1437 (1994)
Nick BOGNER, d/b/a Bogner Ranches, Inc., Plaintiff,
v.
UNITED STATES FOREST SERVICE, an agency of the United States Department of Agriculture; Michael Espy, Secretary of Agriculture; F. Dale Robertson, Chief of the United States Forest Service; Elizabeth Estill, Regional Forester; Mary H. Peterson, Forest Supervisor for the Nebraska National Forest; and Robert Childress, District Ranger for the Fall River Ranger District of the Nebraska National Forest, Defendants,
and
Pioneer Cooperative Grazing District, Amicus Curiae.
Civ. No. 93-5078.
United States District Court, D. South Dakota, Western Division.
May 3, 1994.
Karen Budd-Falen, Cheyenne, WY, and Frank J. Driscoll, Gunderson, Farrar, Aldrich & Demersseman, Rapid City, SD, for plaintiff.
Robert A. Mandel, Asst. U.S. Atty., Rapid City, SD, for defendant.
Daniel Ashmore, Gunderson Palmer Goodsell & Nelson, Rapid City, SD, and Constance E. Brooks and Diane G. Cluxton-Kremer, Constance E. Brooks, P.C., Denver, CO, for amicus curiae.

MEMORANDUM OPINION AND ORDER
BATTEY, District Judge.

PROCEDURAL HISTORY
This is an action for review of an administrative decision by the United States Forest Service to deny plaintiff Nick Bogner (Bogner), a term grazing permit on certain Forest *1438 Service land. The decision by the Forest Service was initially made by the District Ranger charged with control of the land in question and subsequently proceeded through two administrative appeals. Bogner's final administrative appeal before Deputy Regional Forester and Reviewing Officer, Tom Thompson, exhausted his administrative remedies. Accordingly, he filed this action on July 8, 1994, seeking review of the Forest Service decisions to deny him a grazing permit.
Pending are cross motions for summary judgment. Each side has had an opportunity to make submissions under the local rules and the motions are now ripe for the Court to decide.

FACTS
On December 31, 1990, Genevieve Gorr (Gorr), a resident of Scenic, South Dakota, transferred certain property located in south-western South Dakota to the Nebraska National Forest Service. Prior to this land transfer, Bogner had leased the property, known as the "Gorr" or "Fox" allotment, from 1985 through 1990. In each of those years, Bogner used the land for summer pasture for his cattle operation during the months of May through October. Bogner was the sole user of the property from 1985 through the time of the land exchange between Gorr and the Forest Service. However, under the terms of Bogner's 1990 lease, Gorr could terminate the lease at her option in order to complete a land exchange with the Forest Service.
At the expiration of the 1990 lease term between Gorr and Bogner the land exchange had not yet taken place; however, negotiations were ongoing between Gorr and the Forest Service to consummate the transfer. On November 23, 1990, Bogner filed an application for a Term Grazing Permit for the Gorr allotment with the Forest Service. A public hearing was held in Hot Springs, South Dakota, on January 31, 1991, to solicit input on how the public would like to see the newly acquired land administered. Bogner and several other area ranchers attended this meeting and voiced their preferences concerning the management of the property.
On February 21, 1991, District Ranger Robert Childress denied Bogner's application for a grazing permit determining that Forest Service policy required him to restore grazing capacity to existing permittees whose capacity had been previously cut before issuing new permits. This decision was affirmed upon administrative review first by Forest Supervisor Robert Storch and again by Deputy Regional Forester Tom Thompson.
The general warranty deed by which the Forest Service acquired the Gorr allotment contained no stipulation providing that the Forest Service would grant Bogner a grazing permit. In fact, the document does not mention Bogner or his prior leases at all. However, Bogner contends that Section 13.11 of the Forest Service Handbook provides him with a preference to a grazing permit on the land based upon his immediate prior use. The Forest Service argues that section 13.11, when read as a whole and in conjunction with related handbook sections, does not provide Bogner with a preference in this instance. Thus the sole issue for resolution by the Court involves the interpretation and application of section 13.11 of the Forest Service Handbook.

DISCUSSION
This case involves the review of an administrative action. The Court must decide whether the Forest Service's interpretation of the priority for issuance of term grazing permits contained in the Forest Service Handbook (FSH) is in accordance with the law. In reviewing a policy interpretation such as this where Congress has not spoken directly to the issue, the Court may not impose its own construction of the statute or regulation. Sierra Club v. Davies, 955 F.2d 1188, 1193 (8th Cir. 1992). The Court's analysis must simply focus on whether the agency's construction of the statute or regulation is permissible. Id. As the Eighth Circuit noted in Davies:
Since the agency was vested with policy-making power, it is authorized to fill in the gaps that may have been left by Congress and this court cannot substitute its judgment for that of the agency, [citation omitted], unless the court finds the agency's construction inconsistent with the statutory *1439 mandate or that it frustrates the purpose of Congress....
Id.
In this case, the Forest Service's decision regarding the issuance of the term grazing permit was an informal agency decision which will not be disturbed unless the Court finds it to be arbitrary and capricious. Agency decisions should only be set aside if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Furthermore, the Court must defer to any reasonable interpretation given to a statute by the agency charged with its administration, as well as to the agency's interpretations and applications of its regulations and policies in carrying out its statutory duties, unless plainly erroneous. Wilkins v. Secretary of Interior, 995 F.2d 850, 853 (8th Cir.1993). Finally, "when reviewing agency decisions, both the district court and an appellate court must make an independent decision based on the identical record that was before the fact finder." Id., citing Davies, 955 F.2d at 1192.
The Court notes that Bogner's reference to the applicability of the "substantial evidence" standard found in 5 U.S.C. § 706(2)(E) is incorrect as respects this case. The substantial evidence standard applies only to agency decisions made under formal rule-making procedures or formal adjudications. Id.; Davies, 955 F.2d at 1192, n. 10.
Based upon the standard set forth, the Court cannot say that either the Forest Service's interpretation of FSH section 13.11 or its decision to deny Bogner a term grazing permit for the Gorr allotment was arbitrary and capricious. A review of the administrative record clearly demonstrates that the Forest Service consistently interpreted its policy not to provide Bogner with prior-use status in obtaining a grazing permit. Furthermore, the Forest Service took reasonable actions to develop, explain, and follow its policies relating to grazing on new lands in this instance.
In making its decision as to the use of the Gorr allotment, the Forest Service was bound to follow its stated policies and the Forest's Land Management Plan. A.R. 76. The Forest Service's policies are primarily found in the Forest Service Handbook and/or Forest Service Manual. Each document has provisions relevant to the Forest Service's actions in this case. Section 2231.11 defines a term grazing permit as "the document used to authorize individuals, partnerships, or corporations to graze livestock if only NFS grazing capacity is involved." A.R. 83. The permits are issued "for a period up to 10 years, to graze a specified number, kind, and class of livestock, for a specific season and area of use." Id.
Section 13 of the FSH deals with the acquisition of term grazing permits. At issue here is section 13.11 which provides in pertinent part:
13.1 Prior Use

13.11 On Added Lands. When the National Forest System acquires lands through purchase, donation, or exchange, term grazing permits may be issued for the grazing capacity of the added lands in accordance with the acquisition document. Afford priority for permit issuance to persons who were using the lands immediately before the acquisition. In the absence of such stipulation, the grazing capacity shall be available to grant (sec. 13.2).
On lands added through other action  proclamation, legislation, administrative order, transfer, interchange, and so forth  term grazing permits may be issued. ...
Bogner argues that the Forest Service neglected to provide him priority as a prior user in the issuance of a grazing permit as provided in the second sentence of section 13.11. The Forest Service, on the other hand, argues that its interpretation denying Bogner priority is correct.
First, the Forest Service argues that only the first paragraph of section 13.11 applies to this situation as the land in question was obtained by exchange and not by "other action." Second, the Forest Service contends that the second sentence of the first paragraph only provides priority to a prior user covered by a stipulation in the land-exchange document. They claim that when read in context with the other two sentences of the paragraph, the second sentence does not apply to situations where no stipulation is contained within the exchange document; instead, *1440 situations absent a stipulation must proceed under section 13.2.
Section 13.2 of the FSH provides:

13.2 Grant. The Forest Supervisor may issue grazing permits with term status by grant or increase existing term grazing permits to entities recognized as the logical applicants for new range, transitory range, or additional range, provided that the applicants meet the requirements, and are otherwise qualified, and provided the range resource can support increased use. Ordinarily, responsibility for productive management of allotments presents a strong incentive to existing permittees to achieve optimum management of allotments. For this reason, give first consideration for the allocation of additional available range to them.
Issuance of a permit under the grant section also requires the Forest Service to "give first consideration for the allocation of additional available range to [existing permittees]." Id. However, the following handbook section, 13.21, provides that "[g]razing capacity is not available to grant until the following obligations have been met: ... b. All resource improvement reductions made during the preceding 10 years have been restored to permits involved (sec. 16.12)." Thus, the Forest Service argues that it was obligated to restore previously reduced permits before issuing new permits under the grant provision.
In reviewing and attempting to reconcile the Forest Service regulations and policies contained within the record, the Court finds that the interpretation of the Forest Service of the cited Handbook provisions is reasonable and should not be disturbed. As the plaintiff recognizes in his reply brief, the Court should not look at any one section of a provision alone, but rather should consider the entire provision, its regulations, and policies when interpreting it. Richards v. United States, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962). This is exactly what the Forest Service has done in this case. Its interpretation considers the entire FSH policy on issuing term grazing permits. The law of this circuit requires the Court to give substantial deference to an agency's interpretation of its own policy manual, regulation, or statute. See Wilkins, 995 F.2d at 853; Davies, 955 F.2d at 1192-93; Columbus Community Hospital, Inc. v. Califano, 614 F.2d 181, 187 (8th Cir.1980).
The Forest Service gained control of the Gorr allotment through a land exchange. This meant that grazing permits were subject to issuance under the first paragraph of section 13.11. The deed transferring the land to the Forest Service did not provide for a grazing permit to Bogner nor did it give him or anyone else the right to preferential treatment in obtaining a grazing permit. Thus the Forest Service correctly interpreted that absent a stipulation, permits were to be issued pursuant to section 13.2, the "grant" provision. Similarly, under that provision there was a requirement that before any new permit is issued, existing permits that had been reduced in the prior ten years were to be restored to original capacity. The Forest Service's actions were apparently aimed at meeting that requirement. Accordingly, the Court finds no fault in their actions or interpretation of the stated policies.
Besides arguing for a different interpretation of the FSH provisions, Bogner makes several additional arguments challenging the Forest Service decision; however, none of these persuade the Court. First, he argues that the Forest Service gave him "absolutely no consideration" as a prior user of the Gorr allotment. The record, however, indicates that this simply is not the case as the Forest Service recognized repeatedly that Bogner was the prior user, considered his input at the Hot Springs meeting concerning the land, and issued several correspondence and letter decisions regarding Bogner's various grazing permit applications. From the record, it is clear that Bogner's prior use and his position on the issuance of grazing permits were considered by the Forest Service.
Second, Bogner argues that the Forest Service interpretation of section 13.11 renders the second "prior user priority" sentence meaningless. The Court disagrees. By way of hypothetical in its brief, the Forest Service effectively discredits this argument by Bogner and shows just one way in which the Forest Service's interpretation is consistent with its overall reading of the handbook.
*1441 Next, Bogner argues that he should have been issued a grazing permit as the "most logical applicant" under FSH section 13.2. Bogner further contends that his status as an existing permittee and prior user clearly establishes that under section 13.2 he was the best choice for a grazing permit on the Gorr property. This argument ignores the FSH requirement that previously reduced permittees be restored to original permit capacities before issuance of new permits. See FSH section 13.2. The record does not indicate that Bogner held an existing permit that had been reduced in grazing capacity during the preceding ten years. Conversely, the record does indicate that the two individuals who were given grazing permits on the Gorr allotment had previously reduced permits. Therefore, Bogner's qualifications as the "most logical applicant" were irrelevant until the previously reduced permits were restored.
Finally, Bogner argues that the Forest Service has not acted consistently in these types of situations. In his brief, Bogner details a previous "analogous" situation in which the petitioner's prior use of land was apparently given preference in the issuance of a grazing permit. This provides no help to the Court in this instance. The previous case was not before this Court, the full record has not been provided to determine the exact circumstances under which the permit was issued, and the reasons behind the Forest Service's issuance of the permit in that case have not been set forth.

CONCLUSION
For the reasons set forth above, the decision of the Forest Service to deny Bogner a term grazing permit for the Gorr allotment is affirmed. Accordingly, it is hereby
ORDERED that the Forest Service's motion for summary judgment (Docket # 24) is granted.
IT IS FURTHER ORDERED that plaintiff's cross motion for summary judgment (Docket # 32) is denied.