**Dennis PATTERSON, Plaintiff,**

v.

**State of ILLINOIS, DEPARTMENT OF CORRECTIONS, and Odie Washington, Director, Department of Corrections, Defendants.**

No. 98–4005.

United States District Court, C.D. Illinois.

Jan. 26, 1999.

Donan B McAuley, Donan B. McAuley, Rock Island, IL, for Plaintiff.

Gregory T Riddle, Asst. Atty. Gen., Springfield, IL, for Defendants.

### ORDER

MIHM, District Judge.

This matter is before the Court on the Magistrate Judge's Report and Recommendation ("R & R"). Therein, he recommended that this Court grant in part Defendants' Motion to Dismiss Plaintiff, Dennis Patterson's ("Patterson"), Amended Complaint and deny Defendants' Motion to Strike. In his Amended Complaint, Patterson alleges that due to his allergic reactions to tuberculin skin testing and, therefore, his refusal to take such a test, he was terminated in violation of the Rehabilitation Act (Count I) and Title II of the Americans with Disabilities Act ("the ADA") (Count II). In their Motion to Dismiss, Defendants argue: (1) this action is barred by the Eleventh Amendment; (2) neither the State of Illinois ("the State") nor Odie Washington ("Washington") is a proper defendant; (3) Washington is entitled to qualified immunity; (4) Title II of the ADA does not encompass employment disputes; and (5) an adverse reaction to a TB test is not a disability under either the Rehabilitation Act or Title II of the ADA. In their Motion to Strike, Defendants argue that paragraph 15 of the Amended Complaint should be stricken.

In his R & R, the Magistrate Judge recommended:

that the motion to strike be denied and that the motion to dismiss be allowed with prejudice as to Odie Washington, as individuals are not subject to liability under either the ADA or the Rehabilitation Act; allowed with leave to replead as to the Rehabilitation Act claim against the State in Count I, because no allegations of federal financial assistance; allowed with leave to replead as to the entire ADA claim (Count II), because employment disputes can only be litigated under Title I [of the ADA]; and denied in all other respects.

(R & R at 18). Patterson is the only party who filed an Objection to the R & R. Therein, he objects to only one recommendation made by the Magistrate Judge: that Count II be dismissed with leave to replead because employment disputes are not cognizable under Title II of the ADA. Consequently, the Court SUMMARILY ADOPTS those recommendations to which no party has objected.

The sole issue before the Court on the Magistrate Judge's R & R is whether a public employee may bring a claim arising out of an employment dispute under Title II of the ADA. For the reasons stated herein, the Court ADOPTS the Magistrate Judge's recommendation to dismiss without prejudice Count II of the Amended Complaint with leave to replead under Title I of the ADA.

## Standard for Motions to Dismiss

In resolving a motion to dismiss, this Court must consider all well-pled facts as true and must draw all inferences in favor of the non-moving party. *See Bontkowski v. First Nat. Bank of Cicero*, 998 F.2d 459, 461 (7th Cir.1993), *cert. denied*, 510 U.S. 1012, 114 S.Ct. 602, 126 L.Ed.2d 567 (1993). In ruling on a motion to dismiss, courts consider whether relief is possible under any set of facts that could be established as consistent with the allegations in the complaint. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). This Court will dismiss a claim only if it is beyond doubt that no set of facts would entitle the Plaintiff to relief. *See Chaney v. Suburban Bus Div.*, 52 F.3d 623, 627 (7th Cir.1995); *Venture Assoc. Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 432 (7th Cir.1993).

## Factual Background

Patterson is a former employee of the Illinois Department of Corrections ("IDOC") at the Hill Correctional Center. He alleges IDOC has a policy requiring tuberculin skin testing ("the Mantoux TB skin test" or "TB test") for all employees. He further alleges that a Mantoux TB skin test he took in 1992 caused an allergic reaction. A follow-up chest x-ray, however, indicated his condition was normal. He was not re-tested in 1993 or 1994. In 1995, he was informed that the TB test was a condition to employment with IDOC. He subsequently submitted medical documentation of his allergy to the test and submitted a new x-ray, which showed no evidence of acute pulmonary disease or active tuberculosis ("TB"). According to Patterson, TB education material provided by IDOC provides that in addition to the Mantoux TB skin test, TB can be diagnosed by a chest x-ray or lab tests on sputum. He further alleges that employees who test positive to the TB test are not discharged from employment.

Patterson was ordered to submit to the TB test. When he requested an alternative test, his request was denied. He was subsequently suspended from duty in July 1995 for refusing to take the Mantoux TB skin test and told that he could return to duty only after submitting to the test. When he failed to do so by January 1996, his employment with IDOC was terminated.

In his Amended Complaint, Patterson alleges that his adverse reaction to the TB test is a disability or, in the alternative, his adverse reaction to the test created a record of disability or, in the alternative, his employer perceived him as disabled. Consequently, according to Patterson, his termination violated the Rehabilitation Act (Count I) and Title II of the ADA (Count II).

In their Motion to Dismiss, Defendants argue that Title II of the ADA does not encompass employment disputes; instead, Title II is reserved for claims arising from the denial of services by governmental entities. The Magistrate Judge agreed. While recognizing there is a difference of opinion among various courts on this issue, the Magistrate Judge found more persuasive the line of cases holding that a public employee, like all other employees, must bring an ADA claim based on an employment dispute under Title I of the ADA.

## Discussion

In Title I of the ADA, which is entitled "Employment", Congress created a statutory scheme prohibiting employment discrimination based on a person's disability. *See generally* 42 U.S.C. §§ 12111 through 12117. Section 102 of Title I provides:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). The term "covered entity", as defined in Title I of the ADA, clearly includes public employers such as IDOC. *See* 42 U.S.C. § 12111(2), (4). The remedies provision in Title I provides that the remedies for an aggrieved party are those set forth in Title VII of the Civil Rights Act of 1964, which requires a plaintiff to file a charge with the Equal Employment Opportunity Commission ("EEOC") prior to filing a claim in federal court. *See* 42 U.S.C. § 2000e–5(a) (exhaustion requirement); 42

U.S.C. § 12117(a) (Title I incorporation of § 2000e–5(a) by reference). Lastly, Congress conferred power on the EEOC to promulgate regulations to implement Title I of the ADA. *See* 42 U.S.C. § 12116.

In Title II of the ADA, which is entitled "Public Services", Congress created a statutory scheme prohibiting public entities from excluding from participation in or denying the benefits of the services, programs, or activities to a disabled person based on a disability. *See generally* 42 U.S.C. §§ 12131 through 12134. Section 202 of Title II provides:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. The term "public entity" in Title II, like the term "covered entity" in Title I, includes government entities like IDOC. *See* 42 U.S.C. § 12131(1).

Unlike Title I, Title II of the ADA does not have an exhaustion requirement. Section 203 of Title II provides that the remedies for an aggrieved party are those set forth in section 505 of the Rehabilitation Act, which does not require an aggrieved party to exhaust administrative remedies prior to filing a claim in federal court. *See* 29 U.S.C. § 794a (Rehabilitation Act remedies provision); 42 U.S.C. § 12133 (Title II incorporation of § 794a). While the EEOC has the authority to promulgate regulations implementing Title I of the ADA, Congress conferred authority on the Department of Justice ("DOJ") for implementing Title II. *See* 42 U.S.C. § 12134.

Patterson brought his claim under Title II of the ADA. Since the exhaustion of administrative remedies is not required for Title II claims, he did not seek administrative relief prior to bringing his ADA claim. Defendants argue that because Title I of the ADA prohibits discrimination in the employment context and Title II is directed at discrimination by governmental entities in the provision of services and benefits, Patterson must bring his claim under Title I. Consequently, they argue, he must exhaust his administrative remedies before the EEOC prior to filing his ADA claim in this Court.

■ When construing a statutory provision, the controlling principle is that a court must give effect to the clear meaning of the statute as written. *See Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 476, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992). This principle, however, "come[s] into … tension with another fundamental principal of our law, one requiring judicial deference to a reasonable statutory interpretation by an administering agency." *Id.* (citing *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). The issue in this case clearly presents this tension. Pursuant to the enabling provision in Title II of the ADA, the DOJ enacted a regulation indicating that it construes Title II as allowing claims by public employees against their employers for employment discrimination based on a disability. The relevant DOJ regulation provides, "No qualified individual with a disability shall, on the basis of disability, be subjected to discrimination in employment under any service, program, or activity conducted by a public entity." 28 C.F.R. § 35.140(a). In subsection (b)(1) of § 35.140, the DOJ explicitly adopts the employer compliance standards promulgated by the EEOC pursuant to the enabling provision in Title I for employment discrimination cases brought pursuant to Title II of the ADA. *See* 29 C.F.R. § 1630.1 through 1630.16 (EEOC compliance standards). It, however, did not adopt Title I's exhaustion requirement. In its section by section analysis following its regulations, the DOJ opines, "Title II of the ADA applies to all activities of public entities, including their employment practices." It further recognizes "the potential of jurisdictional overlap that exists with respect to the coverage of public entities and the need to avoid problems related to overlapping coverage. The other federal agencies include the Equal Employment Opportunity Commission … ." 28 C.F.R., pt. 35, app. A, subpart C. Hence, it is clear that the DOJ believes that a discrimination claim by a pub-

lic employee against the public employer may be brought under Title II.

The question in this case is whether the DOJ's construction of Title II is entitled to deference from this Court and, if so, whether the construction is "arbitrary, capricious, or manifestly contrary to the statute." *See Chevron,* 467 U.S. at 844, 104 S.Ct. 2778 (citation omitted). In *Chevron,* the Supreme Court set forth the general principles to be followed in cases such as this one:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions: First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron,* 467 U.S. at 842–43, 104 S.Ct. 2778. Elaborating on the *Chevron* analysis, the Seventh Circuit recently stated:

> While this circuit has examined legislative history during the first step of *Chevron ... we now seem to lean toward reserving consideration of legislative history and other appropriate factors until the second Chevron step* .... In the second step, the court determines whether the regulation harmonizes with the language, origins, and purpose of the statute. While not dispositive, a court may find various considerations informative—these considerations might include the consistency of the agency's interpretation, the contemporaneousness of the interpretation, and the robustness of the regulation following congressional reenactment of the underlying statute. Although we sometimes describe

Chevron as a "rubber stamp," ... we know that agencies occasionally act unreasonably. Given the scope of the permissible inquiry under *Chevron's* second step, we believe that courts can rein in the excesses of unreasonable administrative rulemaking. *With that said, however, we reiterate Chevron's fundamental dictate that a court must not "substitute its own construction of a statutory provision for a reasonable interpretation" by the agency in question.*

*Bankers Life and Cas. Co. v. United States,* 142 F.3d 973, 983 (7th Cir.1998) (emphasis added) (citation omitted). Accordingly, based on *Bankers Life,* the first *Chevron* step requires this Court to examine the text of the ADA to determine whether Congress has unambiguously expressed its intent that only Title I of the ADA applies to employment discrimination. Only if this Court determines, based on the plain language of the Act, that Congress' intent is ambiguous, thereby leading to analysis under *Chevron's* second step, may it resort to analysis of the relevant legislative history.

A majority of the courts (including one circuit court of appeals) which have addressed the issue of whether a public employee may bring his or her ADA claim under Title II of the ADA have held that it is permissible for such employees to do so. *See, e.g., Bledsoe v. Palm Beach County Soil and Water Conservation Dist.,* 133 F.3d 816, 820 (11th Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 72, 142 L.Ed.2d 57 (1998); *Dominguez v. City of Council Bluffs, Iowa,* 974 F.Supp. 732, 736–37 (S.D.Iowa 1997); *Wagner v. Texas A & M Univ.,* 939 F.Supp. 1297, 1309–10 (S.D.Tex.1996); *Dertz v. City of Chicago,* 912 F.Supp. 319, 323–25 (N.D.Ill. 1995); *Ethridge v. Alabama,* 847 F.Supp. 903, 906–07 (M.D.Ala.1993); *Petersen v. University of Wisconsin Bd. of Regents,* 818 F.Supp. 1276, 1278 (W.D.Wis.1993). However, there are also courts that have held that employment disputes, whether arising out of private or public employment, must be brought under Title I of the ADA. *See, e.g., Zimmerman v. State of Oregon Dep't of Justice,* 983 F.Supp. 1327, 1329 (D.Or.1997); *Decker v. University of Houston,* 970 F.Supp. 575, 578 (S.D.Tex.1997), *aff'd,* 159

F.3d 1355 (5th Cir.1998) (unpublished order). Although it respects the weight of the contrary authority, the Court is unable to join the courts that have held that a cause of action for employment discrimination may be brought under Title II of the ADA.

■ The Court begins by looking at the language of § 202 of Title II, which sets forth the prohibition against discrimination by a public entity. Therein, public entities are prohibited from excluding from or denying benefits of "services, programs, or activities" by reason of a person's disability. *See* 42 U.S.C. § 12132. They are further and broadly prohibited from subjecting individuals with disabilities to "discrimination." *See id.* Perhaps a strict reading of "services, programs, or activities" could include employment. Furthermore, the blanket prohibition in § 202 against discrimination would, on its face, encompass employment discrimination. However, when attempting to determine whether Congress has clearly expressed its intent, this Court cannot limit itself to a single section in such a comprehensive act as the ADA. *See Richards v. United States,* 369 U.S. 1, 11, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962) ("We believe it fundamental that a section of a statute should not be read in isolation from the context of the whole Act ...."); *Brach v. Amoco Oil Co.,* 677 F.2d 1213, 1220 (7th Cir.1982) ("In expounding a statute, we must not be guided by a single sentence or member of a single sentence, but look to the provision of the whole law, and to its object and policy.").

■ One factor indicating that Congress did not intend for Title II to encompass public employment disputes is that its text does not explicitly address the issue. In Title II, Congress explicitly prohibits discrimination by public entities while conducting "services, programs, or activities," *see* 42 U.S.C. § 12132, and does not use the words "employee", "employer", or "employment" anywhere in the title. While this, by itself, does not necessarily mean that Title II does not cover employment disputes, when read in light of Title I, which explicitly addresses discrimination by employers, it raises a serious doubt that Congress ever intended for Title II to cover such disputes. This is espe-

cially true since Titles I and II were enacted by the same Congress on the same date. *See* Pub.L. 101–336, July 26, 1990, 104 Stat. 323. Hence, Congress certainly knew how to use the words "employer", "employee", and "employment" when setting forth the prohibition against discrimination against disabled persons in the workplace.

In addition to Congress explicitly addressing the issue of employment discrimination in only Title I of the ADA, extending Title II to the realm of employment disputes is problematic because such an extension flirts with violating the "cardinal rule of statutory interpretation that no provision should be construed to be entirely redundant." *Kungys v. United States,* 485 U.S. 759, 778, 108 S.Ct. 1537, 99 L.Ed.2d 839 (1988). Although the DOJ interpretation does not render Title II entirely redundant with Title I, it is rendered redundant to the extent that a public employee, who works for an employer with 15 or more employees, may bring an employment discrimination claim under either title. *See* 42 U.S.C. § 12111(5)(A) ("employer" defined for Title I purposes as "a person ... who has 15 or more employees ....").

Additionally, Title I of the ADA is explicitly entitled "Title I—Employment", while Title II of the ADA is clearly entitled "Title II—Public Services." *See* Pub.L. 101–336, Title I, § 101, July 26, 1990, 104 Stat. 330; *see id.,* Title II, § 201, 104 Stat. 337. Allowing a public employee to bring an employment discrimination claim under the Public Services title, Title II, places the public employee and public employer in unique situations, respectively. A public employee, unlike a private employee, has his choice of titles under which he can bring suit. He can either choose to bring suit under Title I, thereby subjecting himself to the mandatory administrative process that every other employee must go through when filing a discrimination claim, or he can choose to bypass the mandatory administrative process by filing a claim under Title II. Consequently, when the public employee chooses to pursue a claim under Title II, the public employer and the EEOC do not have the opportunity they have in any other ADA suit to settle the dispute through conference, conciliation, and

persuasion prior to the public employee seeking relief in federal court.

Finally, in addition to the absence of the terms "employer", "employee", and "employment" from Title II, there are provisions in Title I dealing with employment that are noticeably missing from Title II and further support a conclusion that Congress clearly intended for only Title I to cover employment disputes. Section 103 of Title I sets forth defenses available to employers against claims of employment discrimination. *See generally* 42 U.S.C. § 12113. There are no such defenses set forth in Title II. Two of the defenses in Title I are business necessity and when an employee in food services has an infectious or communicable disease that can be transmitted by handling food and cannot be eliminated by reasonable accommodation. *See* § 12113(a), (d)(2). Assuming Congress actually intended for Title II to cover job discrimination in the public employment context, one would have to conclude that Congress left it to the DOJ's discretion whether a public employer who provides food services is privy to the communicable disease defense and whether any public employer is privy to the business necessity defense. Since these defenses were important enough for Congress to unequivocally address them in Title I, it is odd that they are not mentioned at all in Title II, unless, of course, Congress never intended for Title II to apply to public employment disputes.

Another noticeable difference between Titles I and II of the ADA is their respective definitions of the term "qualified person with a disability." Section 109 of Title I provides:

> The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. *For the purposes of this subchapter* [the "Employment" subchapter], consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall

be considered evidence of the essential functions of the job.

42 U.S.C. § 12111(8). Section 104 of Title I further provides that the term "'qualified individual with a disability' shall not include any employee or applicant who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use." 42 U.S.C. § 12114. Section 201 of Title II, on the other hand, provides:

> The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131. Noticeably absent from Title II is a provision like the one found in Title I excluding employees or applicants currently engaged in the use of illegal drugs.

A comparison of the different definitions of "qualified individual with a disability" reveals that if Congress intended for Title II to cover public employment disputes, it left it to the DOJ's discretion to determine whether any consideration should be given to an employer's judgment of what functions are essential to the job. Furthermore, if Congress intended for Title II to cover employment disputes, it left it to the DOJ's discretion whether a public employer may make an employment decision based on an employee or applicant currently using illegal drugs. The Court is at a loss to explain why such important considerations were not left to the sound discretion of the EEOC under Title I, but were left to the sound discretion of the DOJ under Title II, unless, of course, Congress never intended for Title II to cover employment disputes.

To summarize, the following signs clearly indicate that Congress did not intend for Title II to encompass employment disputes between public employees and employers:

> (1) Title II never uses or defines the terms "employee", "employer", or "employment".

(2) Title I is entitled "Employment", while Title II is entitled "Public Services."

(3) Title II does not set forth any defenses for an employer like those enacted by Congress in Title I.

(4) Title II does not exclude persons currently using illegal drugs from its definition of "qualified individual with a disability."

(5) A construction of Title II allowing a public employee to bring a claim thereunder makes a public employee the only kind of employee who can bypass the requirement of exhausting administrative remedies.

(6) A construction of Title II allowing a public employee to bring a claim thereunder deprives the EEOC and the employer of the opportunity they have in any other employment discrimination case under the ADA to settle the dispute through conference, conciliation, and persuasion.

Furthermore, if Congress intended for Title II to cover employment disputes between a public employee and employer it left to the DOJ's discretion: (1) whether a public employer had any defenses to an employment discrimination claim; (2) whether a public employer could make an employment decision on the basis of an employee currently using illegal drugs; and (3) whether consideration should be given to a public employer's judgment as to what are the essential functions of a job. While such congressional deference may be unremarkable in the abstract, it is quite remarkable in light of the fact that Congress never left these issues to the sound discretion of the EEOC in Title I.

In conclusion, this Court holds that Congress clearly intended for employment disputes, whether arising from public or private employment, to be brought only under Title I of the ADA.

### Conclusion

For the foregoing reasons, the Court ADOPTS IN PART the Magistrate Judge's R & R [# 23]. The Court SUMMARILY ADOPTS the Magistrate Judge's recommendations to which neither party objected. Accordingly, the Court SUMMARILY HOLDS: (1) Defendants are not immune from suit under the Eleventh Amendment; (2) Defendants are not entitled to qualified immunity; (3) Odie Washington is not a proper defendant under either Count and is, therefore, DISMISSED WITH PREJUDICE from this action; (4) the State of Illinois is DISMISSED from Count I with Patterson having leave of the Court to replead; (5) Patterson has adequately alleged a cause of action under the ADA; and (6) Defendants' Motion to Strike paragraph 15 of the Amended Complaint is DENIED. Lastly the Court ADOPTS the Magistrate Judge's recommendation that although Patterson adequately alleges an ADA claim in Count II of his Amended Complaint, the claim should be brought under Title I of the ADA. Accordingly, Count II of the Amended Complaint is DISMISSED WITHOUT PREJUDICE with leave to replead under Title I of the ADA if he can do so in good faith. Patterson shall have 14 days from the entry date of this Order to serve upon Defendants his Second Amended Complaint. Defendants shall then have 14 days to serve their responsive pleading on Patterson.