Wagan CLIFTON, Jr., Plaintiff,

v.

**GEORGIA MERIT SYSTEM,**
et al., Defendants.

Civil Action No. 1:05–CV–3272–CAP.

United States District Court,
N.D. Georgia,
Atlanta Division.

March 6, 2007.

**1358**

Wagan Clifton, Jr., Cocoa, FL, Pro se.

Bryan K. Webb, Office of State Attorney General, Atlanta, GA, for Defendants.

## ORDER

PANNELL, District Judge.

This action comes before the court on the defendants' motions to dismiss [Doc. Nos. 8 and 12]. The plaintiff, Wagan Clifton, Jr., alleges that he was denied accommodation for his disability (blindness) by the defendants while applying for jobs with the State of Georgia. His claims are brought under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. ("ADA"), 42 U.S.C. § 1983, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, et seq. ("Title VII"). The defendants move to dismiss for lack of personal jurisdiction, improper service of process, and failure to state a claim upon which relief may be granted.

### Factual Background

#### I. The Plaintiff's Job Search

Because this matter is before the court on a motion to dismiss, the court accepts as true the facts alleged in the complaint and construes them in the light most favorable to the plaintiff. *See Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992). The relevant facts alleged in the plaintiff's complaint [Doc. No. 2] and "statement of claim" [Doc. No. 11] are somewhat difficult to follow. Nevertheless, they are summarized to the best of the court's understanding as follows:

The plaintiff, who is blind, sought employment with the Georgia Department of Juvenile Justice in 2004. The plaintiff was specifically interested in the position of Juvenile Justice Specialist II at the Dublin or Savannah facilities. Individuals seeking employment in that position were required by the State to pass a certification exam before submitting an application. The plaintiff's job inquiry began with a call to Georgia Merit System ("GMS"), the State human resources agency responsible for accepting applications for State employment and administering certification examinations. On May 17 or 18, 2004, either the plaintiff or his wife spoke to GMS employee Gil Hodges about the possibility of special accommodations for the certification exam due to the plaintiff's disability. Hodges stated that he would look into the request and call the plaintiff back, but never did.

On May 19, 2004, the plaintiff called the Department of Juvenile Justice Multi–Service Center in Savannah and spoke to Patricia Merritt. The plaintiff told Merritt that he was visually impaired and had already called GMS about certification testing, but had not heard back from anyone. Merritt told the plaintiff that she would call GMS to see if an exam could be sent to Savannah so that he would not have to travel to Atlanta.[1] Later that day,

---

1. The plaintiff is a resident of Cocoa, Florida.

a female representative of GMS named either Amanda Daniels or McDaniel (hereinafter "Daniels") called the plaintiff, stated that a message had been left for her to call him, and asked what the plaintiff wanted. The plaintiff responded that he needed special accommodation for testing because he was blind. Daniels responded "My problem is do you think you can do the job?", to which the plaintiff answered that he could if he was provided with special accommodations. Daniels ended the call by telling the plaintiff that she would check with her supervisor to see what they could come up with and that she would call the plaintiff back the morning of March 22, 2004.

When he did not hear from Daniels the morning of March 22, 2004, the plaintiff called GMS, as the deadline for the Savannah position was approaching. The male GMS representative that answered the phone told the plaintiff that Daniels was at lunch, but that he would leave a message for Daniels to call the plaintiff back.

After not hearing back from Daniels for more than a month, the plaintiff phoned the Juvenile Justice Department's ("JJD") Employment Relations Department. By this time the Savannah position had closed, but there was now an opening for the same position at the Dublin, Georgia location. The plaintiff reached Chris Jones in the JJD Employee Relations Department and asked who he could speak to regarding special accommodations for the certification exam for the Specialist II position. That position had opened on May 3, 2004, and was to close on May 18, 2004. Jones stated that the individual who typically dealt with special accommodation requests was not available, but that Jones could handle the plaintiff's request.

The plaintiff explained that he was completely blind. Jones stated that in light of the plaintiff's disability, a job position such as prison guard or police officer would be out of the question. The plaintiff agreed. Although the JJD web site specifically stated that an applicant must take the certification exam first, then submit an application for the specialist position, Jones told the plaintiff that he was not sure whether the position required an exam. Jones said he would need to call the Dublin facility and then call the plaintiff back, and requested that the plaintiff go ahead and send his application directly to the Dublin facility. The plaintiff faxed his application information to the attention of Rusty Rogers at the Dublin facility on May 7, 2004.

Jones called the plaintiff back later on May 7 and stated that Rogers had received the plaintiff's application and wanted him to take the certification exam before interviewing. Jones told the plaintiff he would need to call GMS and ask for Dick Doughtier to schedule a date for the exam. Jones also told the plaintiff to call Rogers and review the job description with him to see if the plaintiff was still interested in the job.

Plaintiff did not contact GMS as Jones had instructed. Jones consequently phoned the plaintiff on May 10, 2004, to ask whether the plaintiff had spoken to GMS to set up an exam date. The plaintiff told Jones he was not going to call GMS because GMS representatives had treated the plaintiff improperly when he had previously requested special accommodations. The plaintiff told Jones that if he wanted to contact GMS on the plaintiff's behalf, "it was up to him." Jones replied that GMS might deny the request, but that he would call them.

On May 11, 2004, 53 days after the plaintiff last spoke to her, Daniels finally returned his call. Daniels stated that she was calling to schedule a date for the plaintiff to take the certification exam and to clarify what accommodations he would need. Daniels asked the plaintiff if he

could read Braille; the plaintiff responded by asking if the examination was given in Braille. Daniels did not know if the examination was available in Braille and said she would check to see if it was. The plaintiff then asked if GMS had JAWS, a speech synthesizer program for the blind, or if a reader could be provided. Again, Daniels stated that she did not know, but would look into it. Finally, the plaintiff inquired as to whether the examination could be sent to the Office of Disabled Students at the University of Central Florida, where the plaintiff had taken other states' certification examinations. Daniels responded "No, I don't think we can do that," and stated the she would call the plaintiff back on May 12, 2004, to let him know what had been decided. Daniels did not call the plaintiff back on May 12.

The plaintiff's complaint and statement of claim do not state whether he ever took a certification exam, and are unclear as to whether the plaintiff spoke to anyone at GMS or JJD about the position after the events described in the pleadings.

## II. *The Plaintiff's Lawsuit*

The plaintiff, acting pro se, filed a complaint against GMS on November 14, 2005, alleging disability discrimination in violation of the ADA [Doc. No. 2]. GMS filed a motion to dismiss the complaint on March 16, 2006 [Doc. No. 8]. The plaintiff responded to the motion to dismiss on March 27, 2006 [Doc. No. 10]. Nine days later, the defendant filed a "notice of filing statement of claim" [Doc. No. 11] in which he added Section 1983 and Title VII claims and also named several additional defendants, all of whom are State employees (collectively, the "individual defendants"). All but two of the individual defendants

are specifically named in their official capacity. Although this "statement of claim" essentially amounted to an amended complaint, the plaintiff never sought leave of the court to amend his complaint and/or add new defendants.[2]

On April 21, 2006, GMS, along with the individual defendants, filed a motion to dismiss the amended complaint [Doc. No. 12]. The plaintiff did not file a response to the motion to dismiss the amended complaint. This order addresses the defendants' motions to dismiss the original and amended complaints.

### *Legal Analysis*

 Local Rule 7.1(B) requires that responses opposing a motion be filed within 10 days after service of the motion, and also provides that failure by a party to file a response to a motion indicates that the motion is unopposed. Here, the plaintiff has failed to respond to the motion to dismiss the amended complaint, but he previously responded to GMS's motion to dismiss his original complaint. Because the court typically provides leniency to pro se litigants, *see Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972) (directing the courts to construe pro se pleadings liberally), the court will consider the motion to dismiss the amended complaint as contested and address the motion on its merits along with the original motion to dismiss.

### I. *Standard of Review*

 A motion to dismiss may be granted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957); *Bradberry v. Pinellas*

---

**2.** Federal Rule of Civil Procedure 15(a) states, "A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served." Thereafter, the rule provides, "[A] party may amend the party's pleading only by leave of court or by written consent of the adverse party." *Id.*

*County,* 789 F.2d 1513, 1515 (11th Cir. 1986). The rules of pleading require only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Federal Rule of Civil Procedure 8(a). Moreover, the court must, "at this stage of the litigation, ... accept [the plaintiff's] allegations as true." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Stephens v. HHS,* 901 F.2d 1571, 1573 (11th Cir.1990); *cf. South Florida Water Management District v. Montalvo,* 84 F.3d 402, 409 n. 10 (11th Cir.1996)(conclusory allegations and unwarranted deductions of fact are not deemed true on a motion to dismiss). The court's inquiry at this stage focuses on whether the challenged pleadings "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley,* 355 U.S. at 47, 78 S.Ct. at 103. A plaintiff must meet only an "exceedingly low" threshold to survive a Rule 12(b)(6) motion. *United States v. Baxter International, Inc.,* 345 F.3d 866, 881 (11th Cir.2003).

## II. *Title VII Claim*

▮ The plaintiff's Title VII claim can be quickly disposed of. Title VII prohibits employers from discriminating against an individual because of "such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). None of the plaintiff's pleadings contain any allegation that the defendants discriminated against him on any of these bases. Rather, the plaintiff is alleging disability discrimination. Because disability discrimination is not covered by Title VII, the court dismisses the plaintiff's Title VII claim.

## III. *Section 1983 Claim*

▮ The plaintiff's claim under Section 1983 is also due for dismissal. Neither GMS nor the individual defendants named in their official capacity are "persons" within the meaning of Section 1983. 42 U.S.C. § 1983 proscribes certain actions by a "person" or "persons" which violate the rights of others. The term "person" is to be given its regular meaning, and the Supreme Court has specifically held that "a State is not a person within the meaning of § 1983." *Will v. Michigan State Department of Police,* 491 U.S. 58, 65, 109 S.Ct. 2304, 2309, 105 L.Ed.2d 45 (1989). A "State" includes governmental entities, such as GMS, that are "arms of the State."[3] *Id.* at 70, 109 S.Ct. at 2312.

▮ The same analysis applies to the individual defendants, each of whom the plaintiff has named in their official capacity.[4] Although state officials literally are

---

**3.** Whether a governmental entity is an "arm of the State" turns on its function and character as determined by state law. Factors that bear on this determination include the definition of "State" and "political subdivision," the state's degree of control over the entity, and the fiscal autonomy of the entity. *Fouche v. Jekyll Island–State Park Authority,* 713 F.2d 1518, 1520 (11th Cir.1983)(citing *Sessions v. Rusk State Hospital,* 648 F.2d 1066, 1069 (5th Cir.1981)). Applying this analysis to the current facts, the court finds that GMS, a state agency, is plainly an "arm of the State" for purposes of Section 1983 applicability.

**4.** In his "statement of claim" [Doc. No. 11], the plaintiff specifically names defendants Daniels, Rogers, and Jones in their official capacity. Defendants St. Claire (GMS Commissioner) and Murray (JJD employee) are not named in a particular capacity. Where a complaint is unclear on "whether officials are sued personally, in their official capacity, or both," courts must look to "the course of the proceedings" which will "typically indicate the nature of the liability sought to be imposed." *Kentucky v. Graham,* 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 3106, 87 L.Ed.2d 114 (1985); *Gamble v. Florida Department of Health & Rehabilitative Services,* 779 F.2d 1509, 1513 (11th Cir.1986) ("The question is whether the plaintiff is reasonably seeking relief from the state coffers or from the indi-

"persons," a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. *Id.* As such, it is no different from a suit against the State itself. *Id.* at 71, 109 S.Ct. at 2312; *Abusaid v. Hillsborough County Board of County Commissioners*, 405 F.3d 1298, 1302 (11th Cir.2005) (holding that a Section 1983 suit against an officer in his or her official capacity is simply "another way of pleading an action against an entity of which an officer is an agent") (quoting *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985)). Accordingly, the plaintiff's claims under 42 U.S.C. § 1983 are also dismissed.

## IV. *ADA Claim*

The plaintiff's statement of claim states simply, "[T]his action is brought ... under the ADA federal law...." It is thus unclear whether the plaintiff's claim that the defendants failed to accommodate him is based on Title I or Title II of the ADA. Considering the plaintiff's pro se status, the court will read the amended complaint as asserting claims under both Titles I and II of the ADA.

### A. *ADA Claims Against the Individual Defendants*

■■■ The plaintiff asserts his ADA claim against both GMS and the individual defendants named in their official capacity. As mentioned above, however, the claims

against these individuals in their official capacity are indistinguishable from the plaintiff's claims against GMS. *See Graham*, 473 U.S. at 166, 105 S.Ct. at 3105 ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"). Because GMS is separately named as a defendant, the court will dismiss plaintiff's ADA claims against the individual defendants as redundant. *See* Federal Rule of Civil Procedure 12(f) ("upon the court's own initiative at any time, the court may order stricken from any pleading ... any redundant, immaterial, impertinent, or scandalous matter").

### B. *ADA Title I Claim Against GMS*

■■■ Title I of the ADA, 42 U.S.C. §§ 12112–12117, prohibits certain employers, including states, from "discriminating against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. §§ 12112(a), 12111(2), (5), (7). However, the United States Supreme Court has specifically held that the Eleventh Amendment bars private individuals from filing suit against states under Title I for money damages.[5] *Board of Trus-*

---

vidual's assets"). Here, although the course of proceedings is limited, it is notable that the plaintiff served GMS but did not serve any of the individual defendants. Also, nowhere in the pleadings does the plaintiff indicate that he is seeking damages from a source other than the State. Finally, that the plaintiff specified three of the individual defendants as being named in their official capacity suggests that his intent was to name the remaining two in their official capacity as well. Accordingly, the court will treat St. Clair and Murray as having been named in their official capacity.

5. Individuals are not wholly without remedies against a state under Title I. Despite the bar on money damages in individual suits, Title I still prescribes standards applicable to the states. Those standards can be enforced by the United States in actions for money damages, as well as by private individuals in actions for injunctive relief. *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356, 374, 121 S.Ct. 955, 968, 148 L.Ed.2d 866 (2001).

tees of the *University of Alabama v. Garrett*, 531 U.S. 356, 374, 121 S.Ct. 955, 967–68, 148 L.Ed.2d 866 (2001). Here, the plaintiff is not requesting injunctive relief; he is simply seeking money damages. Thus, the plaintiff's claims under Title I of the ADA are due for dismissal pursuant to *Garrett.*

### C. ADA Title II Claim Against GMS

#### 1. Applicability of Title II to Employment Claims

Title II of the ADA, 42 U.S.C. §§ 12131–12134, provides, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The law is unclear whether claims under Title II are available in instances of employment discrimination. *See Garrett*, 531 U.S. at 360, n. 1, 121 S.Ct. at 960 (noting that the courts of appeals are split on the issue, but declining to address it). Neither does the language of Title I clarify the issue, as it says nothing about being an exclusive remedy or avenue for suit. *See Currie v.*

*Group Insurance Commission*, 290 F.3d 1, 6 (1st Cir.2002); 42 U.S.C. § 12112.

The words "public services, programs, or activities" do not necessarily exclude employment,[6] and the "subjected to discrimination" clause may broaden the scope of coverage even further. *Id.* The Second Circuit has held that "programs, services, or activities" is a catch-all phrase that prohibits all discrimination by a public entity, regardless of the context. *Innovative Health Systems, Inc. v. City of White Plains*, 117 F.3d 37, 45 (2d Cir.1997).

Additionally, the Department of Justice ("DOJ") has promulgated a regulation stating that Title II covers employment practices. 28 C.F.R. § 35.140 (2001); *see also* 28 C.F.R. pt. 35, App. A (2001) (elaborating on § 35.140). This regulation is entitled to deference under the *Chevron* doctrine if the statutory language is unclear. *Chevron U.S.A, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984).[7]

One of the two decisions cited by the Supreme Court to illustrate the circuit split on the issue is the Eleventh Circuit's *Bledsoe v. Palm Beach County Soil &*

---

**6.** There are two long-standing civil rights laws, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) (1994 & Supp. IV 1998) and Title IX of the Education Amendments of 1972, 20 U.S.C. 1681(a) (1994), under which the phrase "program or activity" has been held to cover employment practices. *See CONRAIL v. Darrone*, 465 U.S. 624, 632–34, 104 S.Ct. 1248, 1254–55, 79 L.Ed.2d 568 (1984) (Rehabilitation Act); *North Haven Board of Education v. Bell*, 456 U.S. 512, 537–38, 102 S.Ct. 1912, 1927, 72 L.Ed.2d 299 (1982) (Title IX). Additionally, Title VI of the 1964 Civil Rights Act, 42 U.S.C. § 2000d, which also uses the "program or activity" language, contains a specific subsection, *id.* § 2000d–3, limiting its application to employment discrimination to certain instances. *Currie*, 290 F.3d at 6.

**7.** Not surprisingly, the same courts that have split on the general issue Title II's applicability to employment claims have also split on the issue of whether the DOJ's regulations are entitled to deference under *Chevron.* In its opinion in *Zimmerman v. Oregon Department of Justice*, 170 F.3d 1169 (9th Cir.1999), the Ninth Circuit determined that the regulations were not entitled to deference because "Congress unambiguously expressed its intent for Title II not to apply to employment." *Id.* at 1173. In contrast, the Eleventh Circuit in *Bledsoe v. Palm Beach County Soil & Water Conservation District*, 133 F.3d 816, 823 (11th Cir.1998), relied significantly on the DOJ's regulations in concluding that "employment coverage is clear from the language and structure of Title II" and deferring to the DOJ's "reasonable construction of statutory language." *Id.* at 822–23.

*Water Conservation District,* 133 F.3d 816 (11th Cir.1998). In *Bledsoe,* the plaintiff sued his employer, a county agency, under Title II for failing to accommodate his knee injury. The Eleventh Circuit, addressing the issue for the first time, held that Title II states a cause of action for employment discrimination. *Id.* at 825. Citing *Innovative,* the court adopted the view that the "services, programs, or activities" clause of § 12123 was a catch-all phrase prohibiting all discrimination by a public entity, regardless of context. *Bledsoe,* 133 F.3d at 822. The court also afforded significant weight to the DOJ regulation stating that Title II applies to employment practices. *Id.* at 823; 28 C.F.R. § 35.140. Eleventh Amendment immunity was not at issue in the case.

Further, the Fourth, Fifth and Tenth Circuits appear to have assumed, without deciding, that Title II applies to public employment. *Davoll v. Webb,* 194 F.3d 1116, 1130 (10th Cir.1999); *Holmes v. Texas A & M University,* 145 F.3d 681, 684 (5th Cir.1998); *Doe v. University of Maryland Medical System,* 50 F.3d 1261, 1265 (4th Cir.1995).

As the Supreme Court observed in *Garrett,* however, the only other circuit court to squarely address the issue came to the opposite conclusion—that Title II does *not* state a claim for employment discrimination. *See Zimmerman v. Oregon Department of Justice,* 170 F.3d 1169 (9th Cir. 1999). The court in *Zimmerman* noted that employment by a public entity is not a "service, program or activity" as set forth in Title II. *Id.* at 1174. Further, the court's analysis suggested that it would be unlikely that Congress intended to have Title II apply to an employment situation when it crafted extensive employment specific provisions in Title I, which carries the term "Employment" as its heading while Title II is described as "Public Services."

*Id.* at 1177. Additionally, though not directly on point, the Sixth Circuit, addressing an employment claim brought under Title III of the ADA, held that "the statutory framework of the ADA expressly limits its discrimination in employment practices to Title I of the ADA." *Parker v. Metropolitan Life Insurance Company,* 121 F.3d 1006, 1014 (6th Cir.1997) (en banc).

The Supreme Court's own language in recent decisions seems to signal that it would favor the approach of limiting employment discrimination claims to Title I. In *Garrett,* although declining to rule on the issue, the Court saw fit to caution that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Garrett,* 531 U.S. at 360, 121 S.Ct. at 960 (quoting *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983)).

Likewise, in *Tennessee v. Lane,* 541 U.S. 509, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004), the Court used language suggesting that employment discrimination was addressed only by Title I. In that case the court held that Title II claims against states regarding courthouse access for the disabled were not barred by the Eleventh Amendment. *Id.* at 533, 124 S.Ct. at 1994. The case did not involve employment discrimination, however, and the Court's general description of the ADA intimates that such claims would only be covered by Title I: "[The ADA] forbids discrimination against persons with disabilities in three major areas of public life: *employment, which is covered by Title I of the statute;* public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III." *Id.* at 516–17, 124 S.Ct. at 1984 (emphasis added).

Considering the volume of authority on both sides of the issue, the question of whether Title II applies to employment discrimination claims is clearly a difficult one. In light of the Supreme Court's dicta in *Garrett* and *Lane*,[8] this court questions the ongoing validity of the DOJ's regulations interpreting Title II, which the Eleventh Circuit relied heavily upon in *Bledsoe*. The practice of reading Title II to provide a cause of action for employment discrimination is troubling to this court for a variety of reasons.

First, interpreting Title II to encompass employment discrimination claims would make many of Title I's provisions redundant, risking violation of one of the canons of statutory construction. *Clark v. Chicago*, No. 97–C–4820, 2000 WL 875422, at *5–6, 2000 U.S. Dist. LEXIS 21515, at *17 (N.D. Ill. June 28, 2000); *see also Pennsylvania Department of Public Welfare v. Davenport*, 495 U.S. 552, 562, 110 S.Ct. 2126, 2133, 109 L.Ed.2d 588 (1990) (noting the Supreme Court's "deep reluctance to interpret a statutory provision so as to render superfluous other provisions in the same enactment"). Although the DOJ's regulations do not render Title II entirely redundant with Title I, it is rendered redundant to the extent that an individual who works for, or applies for a position with, a public employer with 15 or more employees may bring an employment discrimination claim under either title. *See* 42 U.S.C. § 12111(5)(A) ("employer" defined for Title I purposes as "a person … who has 15 or more employees").

The approach taken by the Second Circuit in *Innovative*, and adopted by the Eleventh Circuit in *Bledsoe*, of viewing the "programs, services, or activities" language as a "catch-all" phrase prohibiting

all discrimination by a public entity is similarly problematic. *Innovative*, 117 F.3d at 45; *Bledsoe* 133 F.3d at 822. Specifically referring to the issue at hand, the Supreme Court in *Garrett* noted that where language is used in one part of a statute but omitted in another, it is generally presumed that the omission was intentional. 531 U.S. at 360, 121 S.Ct. at 960; *see also Richards v. United States*, 369 U.S. 1, 11, 82 S.Ct. 585, 591–92, 7 L.Ed.2d 492 (1962) ("We believe it fundamental that a section of a statute should not be read in isolation from the context of the whole Act. . . ."). Again, Title I of the ADA is entitled "Employment," while Title II is entitled "Public Services;" moreover the terms "employee," "employer," and "employment" are nowhere to be found in Title II. Similarly, Title I caps the amount of compensatory damages recoverable by size of employer, *see* 42 U.S.C. § 1981a(b)(3), and prohibits punitive damages against municipal employers, *see* 42 U.S.C. § 1981a(b)(1). Title II has no such limitations.

Thus, applying Title II to public employees and applicants would nullify these statutory limits for a significant category of employment discrimination plaintiffs. *Cormier v. City of Meriden*, No. 3:03–cv–1819, 2004 WL 2377079, at *7, 2004 U.S. Dist. LEXIS 21104, at *25–26 (D.Conn. Sept. 30, 2004). By overlooking these facts, the "catch-all" analysis employed in *Innovative* and *Bledsoe* appears to contradict both Congress's intent in drafting the statute and the Supreme Court's well-established precedent on statutory construction.

Finally, and of the most practical concern to the district courts, allowing employment discrimination claims to proceed

---

8. "[C]arefully considered language of the Supreme Court, even if technically dictum, generally must be treated as authoritative." *Sierra Club v. EPA*, 322 F.3d 718, 724 (D.C.Cir. 2003) (quoting *United States v. Oakar*, 111 F.3d 146, 153 (D.C.Cir.1997)) (internal quotation marks omitted).

under Title II provides a loophole for plaintiffs to circumvent the administrative exhaustion requirements of Title I. For example, a plaintiff claiming employment discrimination based upon disability pursuant to Title I of the ADA is required to exhaust administrative remedies by filing a timely complaint with the EEOC, obtaining a right to sue letter, and commencing suit within the specified limitations period. *See* 42 U.S.C. § 12117 (applying Title VII administrative procedures to ADA claims); 42 U.S.C. § 2000e–5. "This exhaustion requirement is an essential element of Title VII's statutory scheme . . . and is designed to give the administrative agency the opportunity to investigate, mediate, and take remedial action." *Shah v. New York State Department of Civil Service*, 168 F.3d 610, 614 (2d Cir.1999). Title II, on the other hand, does not require plaintiffs to pursue any relief through the EEOC. *See* 42 U.S.C. § 12133.

Consequently, a construction of Title II allowing employees or applicants to bring suit against public entities creates a special category of claimants who are given a free pass around the administrative exhaustion requirements. *See Patterson v. Department of Corrections*, 35 F.Supp.2d 1103, 1109–10 (C.D.Ill.1999) (raising similar concerns in dismissal of Title II reasonable accommodation claim in an employment testing case). Such a construction also deprives the EEOC and the employer of the opportunity they have in any other employment discrimination case under the ADA to settle the dispute through conference, conciliation, and persuasion. *Id.* This approach threatens to burden the courts with lawsuits that might never have been brought had the claimants been required to first utilize these administrative remedies.

However significant this court's concerns with allowing employment discrimination claims under Title II, though, it is bound by the prior precedent of this circuit. Because the Eleventh Circuit specifically ruled on this issue in *Bledsoe*, this court must find the plaintiff's claims against GMS under Title II of the ADA cognizable and accordingly reject GMS's arguments that the plaintiff cannot state a claim for employment discrimination under Title II.

*2. Title II and Eleventh Amendment Immunity*

GMS argues that even if the plaintiff has stated a cognizable claim under Title II, it is nonetheless protected by Eleventh Amendment immunity from such a claim. The court agrees.

The Eleventh Amendment typically bars federal suits against State officials in their "official capacity" because such actions seek recovery from state funds. *Hobbs v. Roberts*, 999 F.2d 1526, 1528 (11th Cir.1993). Even when Article I of the Constitution vests in Congress complete law-making authority over a particular area, the Eleventh Amendment prevents congressional authorization, under that power alone, of suits by private parties against unconsenting States. *Seminole Tribe v. Florida*, 517 U.S. 44, 72, 116 S.Ct. 1114, 1131, 134 L.Ed.2d 252 (1996).

Congress can, however, abrogate a State's sovereign immunity when it does so pursuant to a valid exercise of its power under Section 5 of the Fourteenth Amendment to enforce the substantive guarantees of that Amendment. *Lane*, 541 U.S. at 518, 124 S.Ct. at 1985. To determine whether such an abrogation is proper, a court must resolve (a) whether Congress unequivocally expressed its intent to abrogate that immunity, and, if it did, (b) whether it "act[ed] pursuant to a valid grant of constitutional authority." *Kimel v. Florida Board of Regents*, 528 U.S. 62, 73, 120 S.Ct. 631, 640, 145 L.Ed.2d 522

(2000). Here, the first *Kimel* requirement is clearly satisfied by the language of the ADA itself. *See* 42 U.S.C. § 12202 ("A State shall not be immune under the Eleventh Amendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this chapter").

■■■ The remaining question, then, is whether Congress acted pursuant to a valid grant of constitutional authority by subjecting the states to suits in federal court for money damages under Title II. *Garrett*, 531 U.S. at 364, 121 S.Ct. at 962. Legislation such as the ADA is valid if it exhibits "a congruence and proportionality" between an injury and the means adopted to prevent or remedy it. *City of Boerne v. Flores*, 521 U.S. 507, 520, 117 S.Ct. 2157, 2164, 138 L.Ed.2d 624 (1997). Examination of the legislative history of the legislation in question is important, as "the constitutional propriety of [legislation adopted under the Enforcement Clause] must be judged with reference to the historical experience . . . it reflects." *Id.* at 525, 117 S.Ct. at 2166.

Specific guidance from the Supreme Court and the Eleventh Circuit on the

Title II employment discrimination issue is largely absent. Although the Supreme Court held in *Garrett* that states were immune under the Eleventh Amendment from individual Title I employment claims for money damages, it declined to specifically address the issue of immunity from Title II claims, as the parties had not briefed it. 531 U.S. at 360, n. 1, 121 S.Ct. at 960. Likewise, the Court's holding in *Lane* that Congress had properly abrogated the states' Eleventh Amendment immunity for certain types of Title II claims is inapplicable here, as the holding was narrowly crafted and limited to cases implicating the accessibility of judicial services.[9] *See Lane*, 541 U.S. at 530–31, 124 S.Ct. at 1992–93; *see also Constantine v. Rectors and Visitors of George Mason University*, 411 F.3d 474, 486 (4th Cir. 2005). The Eleventh Circuit has not yet ruled on this issue.[10]

The Supreme Court's holding in *Kimel*, though addressing a different anti-discrimination statute, is instructive for purposes of this analysis. *Kimel* focused on the Age Discrimination in Employment Act, 29 U.S.C. § 623 et al. ("ADEA"), which prohibits employers, including states and state

---

**9.** The Court's recent decision in another Title II case, *United States v. Georgia*, 546 U.S. 151, 126 S.Ct. 877, 163 L.Ed.2d 650 (2006) is also inapplicable here. The Title II claim in that case was asserted by a paraplegic prisoner challenging the conditions of his confinement. *Id.* at 879. The Court found that the same conduct that allegedly violated Title II also violated the Eighth Amendment, which prohibits cruel and unusual punishment. *Id.* at 880–81. Therefore, the Court reasoned, the plaintiff's claims for money damages against the State under Title II were based, in large part, on conduct that independently violated the provisions of § 1 of the Fourteenth Amendment. *Id.* at 881 (citing *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 463, 67 S.Ct. 374, 376, 91 L.Ed. 422 (1947)(holding that the Due Process Clause of the Fourteenth Amendment incorporates the Eighth Amendment's guarantee against cruel and unusual

punishment)). No such independent violation of a stated constitutional protection is clearly implicated in the matter at hand.

**10.** The Eleventh Circuit has, however, addressed the issue in the context of Title II claims based on accessibility to public education. In *Association for Disabled Americans, Inc. v. Florida International University*, 405 F.3d 954 (11th Cir.2005), the Eleventh Circuit expanded the holding of *Lane* to find that Title II of the ADA is valid legislation enacted pursuant to § 5 of the Fourteenth Amendment as applied to public higher education, and that the Eleventh Amendment does not pose a bar to claims against the states under Title II of the ADA for such claims. *Id.* at 959. *Association for Disabled Americans* is not controlling in this case, however, as it did not address employment discrimination claims under Title II.

entities, from refusing to hire persons because of their age. 29 U.S.C. §§ 623(a)(1), 630(b). The Court held that although the ADEA's language expressly allows suits against state entities, it does not abrogate state entities' Eleventh Amendment immunity because it is grounded in Congress's Article I powers, not Congress's powers to enforce the Fourteenth Amendment. *Kimel,* 528 U.S. at 82–83, 120 S.Ct. at 645. Considering the legislative history of the ADEA, the Court held that "the substantive requirements the ADEA imposes on state and local governments are disproportionate to any unconstitutional conduct that conceivably could be targeted by the Act." *Id.* at 83, 120 S.Ct. at 645. The Court later employed this same analysis in *Garrett* to find that scattered incidents of failure on the part of state officials to accommodate disabled employees "taken together fall far short of even suggesting the pattern of unconstitutional discrimination on which § 5 legislation must be based." *Garrett,* 531 U.S. at 370, 121 S.Ct. at 965.

The court is aware of only two decisions by courts in this circuit [11] addressing the Eleventh Amendment immunity issue in the Title II context. *See Leverette v. Alabama Revenue Department,* 453 F.Supp.2d 1340, 1345 (M.D.Ala.2006); *Williamson v. Georgia Department of Human Resources & Georgia Regional Hospital,* 150 F.Supp.2d 1375, 1381–82 (S.D.Ga.2001). In both of those cases, the district courts held that because Congress failed to adequately identify a pattern of irrational State conduct when it enacted Title II, it improperly abrogated the States' Eleventh Amendment immunity. *Id.*

Following careful review of the statutory scheme and language of the ADA, as well as existing case law on the subject, this court concludes that Congress did not validly abrogate sovereign immunity with regard to state employment discrimination actions under Title II. The court finds that the Supreme Court's holding in *Garrett* that "[t]he legislative record of the ADA ... simply fails to show that Congress did in fact identify a pattern of irrational state discrimination in employment against the disabled" is equally applicable to employment discrimination claims under Title I and Title II of the ADA. *Garrett,* 531 U.S. at 368, 121 S.Ct. at 965.

In sum, a plaintiff should not be permitted to circumvent the holding of *Garrett* immunizing states from employment discrimination claims brought pursuant to Title I of the ADA by commencing suit under Title II, a subchapter which lacks any of the procedural protections afforded employers under Title I. Accordingly, because the court concludes that GMS is immune from the plaintiff's Title II claim, the court lacks jurisdiction over that claim and must dismiss it.

## V. *Failure to Serve the Individual Defendants*

The defendants also argue that the plaintiff's claims against the individual defendants should be dismissed because the plaintiff never served them. From the record available to the court, it appears this argument is valid, as the only defendant that the plaintiff has served is GMS. Because the claims against the defendants have been dismissed on other grounds,

---

**11.** Predictably, courts outside this circuit have split on this issue as well. *Compare Alsbrook v. City of Maumelle,* 184 F.3d 999, 1010 (8th Cir.1999) (holding that Title II does not apply to the States) with *Coolbaugh v. Louisiana,* 136 F.3d 430 (5th Cir.1998) (ruling that Title II does apply to the States); *but see Kazmier v. Widmann,* 225 F.3d 519, 529 (5th Cir.2000) (stating that the "continuing validity of *Coolbaugh* has been called seriously into question by ... *Kimel* ").

however, the court needs not address this argument.

### *Conclusion*

For the reasons stated above, the defendants' motion to dismiss [Doc. No. 8] and motion to dismiss amended complaint [Doc. No. 12] are hereby **GRANTED.** The plaintiff's claims against the defendants are dismissed in their entirety and the clerk is instructed to terminate the case.